[S. F. No. 14701. In Bank.—October 14, 1932.]

THOMAS MULCAHY et al., Petitioners, v. B. W. BALDWIN, as Secretary, etc., Respondent.

C. F. Metteer, W. H. Orrick and Orrick, Palmer & Dahl-quist for Petitioners.

H. J. Hankins, A. L. Cowell and Stephen W. Downey for Respondent.

SHENK, J.—*Mandamus* to compel the respondent, as secretary of the board of directors of the Nevada Irrigation District, to countersign refunding bonds of the district.

The Nevada Irrigation District was formed and came into existence on August 17, 1925, under the California Irrigation District Act (Stats. 1897, p. 254, as amended). The district is located in the foothill regions of Nevada and Placer Counties and comprises approximately 267,000 acres of land. Of this acreage only 8,000 acres are under irrigation and only about 4,000 acres are being served from the district's works.

In 1925 a first issue of district bonds was duly authorized. Of this issue bonds in the principal sum of $7,250,000 have been issued and sold. Later, and in 1928, a second issue was duly authorized in the amount of $2,592,000. Of the first and second issues $8,100,000 in bonds are now outstanding. They are serial bonds, the first issue maturing from 1933 to 1965, inclusive, and the second issue maturing from 1949 to 1968, inclusive. All of said bonds bear interest at the rate of five and one-half per cent per annum and the annual interest charges on the outstanding bonds is $445,500. The district's revenues were contemplated to be, and probably will continue to be, derived in large measure from its contracts for the use of water with the Pacific Gas and Electric Company. On account of the shortage of water in recent years the revenues of the district from said contracts became greatly depleted and the fixed charges amounted to more than the lands in the district could bear. At the instance of certain bondholders a committee was appointed to inquire into the economic conditions and financial situation of the district. This investigation disclosed that a radical reduction in the present fixed charges on the bonded indebtedness of the district should be made without delay if complete failure was to be avoided. The bondholders' committee, in conjunction with the board of directors of the district, evolved a plan for the issuance of refunding bonds in the sum of $8,100,000, to bear fixed interest at the rate of four per cent per annum, and to carry separate coupons for additional interest, up to five and one-half per cent in all, payable only under certain conditions and from certain revenues specified in the plan. The entire issue of the refunding bonds is to mature on July 1, 1977, provision being made for a special reserve fund to insure the payment of interest and repairs on the district's works and for a sinking fund from the surplus revenues derived from the power

contracts for the call and redemption of the bonds or portions thereof prior to maturity. Under the plan the obligation of the district to pay the principal of the refunding bonds at maturity and the fixed interest of four per cent per annum is to be absolute and unconditional, and is to be payable from revenues derived from an annual assessment upon all of the lands within the district in an amount sufficient to pay the same at maturity, unless the district shall have on hand and available for that purpose revenues derived from the power contracts sufficient therefor.

The foregoing plan was adopted by the board of directors of the district and the proposition for the authorization and issuance of said refunding bonds was duly submitted to the electors of the district at a special election held on September 14, 1931. The favorable vote thereon was nearly five to one. The refunding bonds proposed to be issued and exchanged for the outstanding bonds, at the option of the holders of the latter, contain a recital and certification that the principal and fixed interest of four per cent on said bonds shall be payable from revenue derived from an annual assessment upon the lands in the district and that all of the lands within the district shall be and remain liable to be assessed for such payment.

The respondent seeks to justify a refusal to countersign the bonds first, on the ground that the foregoing recital and certification is false and contrary to the provisions of that portion of section 11 of the California Districts Securities Commission Act (Stats. 1931, p. 2267), which purports to vest power in boards of directors of irrigation districts in this state, with the consent of the commission, in levying the annual assessment, when there are not in the district treasury sufficient funds to pay principal and interest on bonds then due, to "levy for the purpose of providing for the payment of principal or interest on bonds only such amount as in the judgment of the commission it will be possible for the landowner in said district to pay".

There appears to be at least two sufficient reasons why the refusal of the respondent to countersign said refunding bonds on the ground stated is not justifiable. The California Districts Securities Commission Act became effective on August 14, 1931. Its purpose undoubtedly was to cover the same field occupied by the California Bond Certifi-

cate Commission Act of 1913 (Stats. 1913, p. 778), as amended, with additional provisions, among which are those of section 11, wherein it is provided that whenever any district shall have been in. default in the payment of any of its bonds or any interest thereon for a period of one year, any holder of bonds of said district may request the commission in writing to take the necessary steps to have the district declared insolvent. The procedure is then outlined for the ultimate declaration of insolvency of the district by the superior court. Thereafter the district is under the control and direction of the commission to the extent of, and in accordance with the provisions of ·the act. The Nevada Irrigation District has not been declared insolvent. The reasonable, if not the only fair construction of said section 11 is that the power therein vested in the board of directors of the district, in conjunction with the approval of the commission, to levy on the lands in the district an annual assessment for the payment of principal and interest on the district bonds ''only such amount as in the judgment of said commission it will be possible for the landowner in said district to pay'', is confined and limited to such districts as have been declared insolvent in accordance with the provisions of said section. If this be not true then it is clear that the provisions of section 11 above quoted, purporting to vest in the board of directors the power to levy an assessment on the lands in the district for less than the amount necessary to satisfy the principal and interest of bonds of the district then due, is contrary to the provisions of the Irrigation District Act. Such purported grant of power to be effective must be deemed to amend or supersede the California Irrigation District Act and particularly section 39 thereof which imposes upon the board of directors of the district the duty to levy annually on the lands in the district an amount sufficient to satisfy the obligations of the district under its outstanding bonds. Said section 11 cannot be given that effect for the reason that the act of which it is a part does not purport to amend the Irrigation District Act, except as might be inferred from the language of the section that the power to levy an assessment for less than the amounts due on principal and interest on the district's bonds is granted ''notwithstanding any other provision of law governing such district''. But if this

language was intended to amend and supersede the provisions of the Irrigation District Act it was ineffectual for the reason that such purpose is not mentioned in the title of the act in which it is included ·and cannot be included therein by any reasonable construction. If it were intended to be applicable to districts not declared to be insolvent it is ineffectual under section 24 of article IV of the Constitution.

■ The second sufficient reason why the refusal of the respondent to countersign the bonds is not justified is that if section 11 is to be held to authorize the levy of an assessment in "only such amount as in the judgment of the commission it will be possible for the landowner to pay," the language can only apply to refunding bonds issued under the provisions of that section alone with the approval of the commission but without vote of the land owners, since, obviously, if the language is intended to apply to bonds issued or to be issued under the California Irrigation District Act, the section must be held void for the reasons above stated. Accordingly, the refunding bonds of the respondent, having been issued under the provisions of the California Irrigation District Act, are not subject to the modified assessment provided for in section 11 of the above-mentioned act creating the California Districts Securities Commission.

■ The second contention of the respondent is that there is no valid authority for the issuance of refunding bonds by the district in the manner proposed. It is claimed that sections 32a to 32e, inclusive, of the Irrigation District Act are unconstitutional and void. Section 32a was amended and sections 32b to 32e, inclusive, were added as new sections to the Irrigation District Act by an emergency statute enacted in 1931. (Stats. 1931, p. 777.) Section 32a was added as a new section in 1923 (Stats. 1931, p. 777). Section 32a was added as a new section in 1923 (Stats. 1923, p. 628), and provided for the issuance of refunding bonds of irrigation districts in substantially the same manner as other bonds of the district, which included the approval of two-thirds of the electors of the district, and provided for the exchange of such bonds for outstanding bonds at the option of the holders of the latter. As amended the section makes like provision but specifies that a majority vote only

shall be required for the authorization of such refunding bonds. New section 32b provides that any issue of refunding bonds may, in the discretion of the board, be made to mature serially or at one time and if the maturity be at one time a sinking fund shall be set up to purchase or retire outstanding bonds, which fund shall be fortified and replenished by assessments on the lands in the district. The provisions of new section 32c present no matters in controversy. New section 32d provides that, at the option of the board, the principal and interest of the refunding bonds may be made payable solely from the proceeds, in whole or in part, of any existing or proposed contract or contracts of the districts for the sale of water or electricity, or from any sources of payment other than assessments. New section 32e provides that the board may by resolution allocate to the payment of principal and interest on any bonds of the district, including refunding bonds, the proceeds of any such existing or proposed contracts; that in case such allocation be made the proceeds from such contracts shall be devoted to the exclusive benefit of the bonds designated to be paid therefrom and neither the district nor any officer thereof shall be liable for such payment otherwise.

The respondent attacks these enactments as special legislation with reference to refunding bonds not made applicable to all bonds of the district. It is pointed out that other bonds must mature serially, whereas, refunding bonds may be made to mature at one time; that other bonds must be authorized by a two-thirds vote, whereas, refunding bonds may be authorized by a majority vote; that refunding bonds may be called for redemption, whereas no such provision is made for other bonds; that the board may make refunding bonds payable exclusively from the proceeds of power or other contracts, whereas other bonds are made payable from assessments, and that the board may allocate the proceeds from such contracts exclusively to the payment of refunding bonds to the prejudice of the land owners of the district who have the right to expect that the revenues of the district, including those from the sale of water for power generation purposes, will be applied equitably to all obligations of the district.

The legislature has power to provide "for the supervision, regulation and conduct, in such manner as it may

determine, of the affairs of irrigation districts, reclamation districts or drainage districts, organized or existing under any law of this state". (Const., art. XI, sec. 13.) This power has been declared to be plenary. (*Palo Verde Irr. Dist.* v. *Seeley,* 198 Cal. 477, 483 [245 Pac. 1092].) In its exercise it cannot be said that the legislature has exceeded constitutional bounds by providing a plan for the authorization and issuance of refunding bonds different from that provided for the issuance of other bonds of the district. Conceivably there may have been sufficient reasons for a different plan due to the changed conditions in the affairs of districts. It is not unusual that the conditions surrounding the renewal of a debt differ from those surrounding its original creation. When the legislature has, as here, by general law, prescribed how all refunding bonds of such districts shall be authorized and issued, its action in that respect may not be successfully challenged because the plan so laid down is not identical with that required in the case of other bonds. [5] It may be said generally that as between it and the state the district has no rights or powers which the legislature may not modify or abrogate at pleasure. When private rights have been acquired and become vested under a prior state of the law, the question of the impairment of such rights may become pertinent. (*La Mesa etc. Irr. Dist.* v. *Halley,* 197 Cal. 50, 60, 62 [239 Pac. 719].)

It is insisted that the contract rights of the holders of outstanding bonds who may elect not to convert their holdings into refunding bonds are impaired by the provisions of section 32e in so far as they provide for the allocation of the power contract revenues to the satisfaction of principal and interest on the refunding bonds. The declared plan of the Irrigation District Act is that the holders of outstanding bonds of the district have the right to enforce their demands solely by an annual assessment on the lands in the district. Such is their contract. Until the enactment of the refunding statute of 1931 bondholders had recourse in law to no other source of revenue. May it fairly be said that the rights of holders of prior bonds are impaired because the holders of refunding bonds are given assurance of payment thereof in addition to the assessment on the lands in the district? We think not. The

power contracts may have been an inducement to the purchasers of the original bonds, but in law purchasers of those bonds could look only to the statutory right of assessment and enforced payment under that method of raising revenue. They must be deemed to have so understood when they made their purchases.

It is also contended that rights of contract with the land owners upon the organization of the district will be impaired by the proceedings under the new legislation. It is elementary that there can be no impairment of a contract by a change thereof if the change is effected with the consent of the contracting party affected thereby. Here there can be no change in the land owners' contract for the issuance of new bonds without the consent of a majority of the electors of the district, just as there could be no contract in the first instance without their consent. The vote of the electors in each instance must be deemed to be binding on the land owners. There is no constitutional requirement of a favorable two-thirds vote in the authorization of a bond issue of such a district. A majority vote would seem to be in harmony with our system and form of government. The case of *Merchants Nat. Bank* v. *Escondido Irr. Dist.*, 144 Cal. 329 [77 Pac. 937], so strongly relied upon by the respondent, is not in point. There the legislature assumed to authorize the board of directors to provide additional security for the payment of bonds of the district by way of pledge, mortgage or deed of trust on all of the property of the district. By foreclosure of the indentures executed the property of the district would be lost. The consent of the electors was not required to give effect to the exercise of the power by the board. When, as here, the question of the issuance of refunding bonds must be submitted to and be approved by the electors of the district, the terms of the statute of their authorization must be contemplated in the vote of approval, including the assent of the electors that the revenue from the power contracts be allocated to the payment of their principal and interest. There is no merit in the point that refunding bonds must be made payable serially. When they are made payable at one time with provision for a sinking fund and the retirement of the bonds on call, no' additional burden is placed on the land

owners of the district. Such a method is within the control of the legislature.

We conclude that the provisions of section 11 of the California Districts Securities Commission Act of 1931 have no application to the authorization and issuance of refunding bonds of districts which have not been declared insolvent; that the 1931 amendments of the Irrigation District Act are not obnoxious to the Constitution as special legislation, or otherwise, and that no contract rights will be impaired by the issuance of the proposed bonds.

Let a peremptory writ issue as prayed.

Waste, C. J., Tyler, J., *pro tem.*, Curtis, J., Seawell, J., Preston, J., and Langdon, J., concurred.