[S. F. No. 15624. In Bank.—July 1, 1936.]

COUNTY OF LOS ANGELES (a Body Corporate and Politic), Petitioner, v. ALFRED JONES, as County Surveyor, etc., Respondent.

Everett W. Mattoon, County Counsel, and Harold W. Kennedy, Deputy County Counsel, for Petitioner.

O'Melveny, Tuller & Myers and James L. Beebe, as *Amici Curiae* on Behalf of Petitioner.

Robert H. Dunlap and George R. Larwill for Respondent.

CURTIS, J.—This proceeding was instituted to test the validity and constitutionality of the 1935 amendment (Stats. 1935, p. 1999) to the "Assessment Bond Refunding Act of 1933". In the year 1931 the legislature passed an act providing for the refunding of certain classes of improvement bonds (Stats. 1931, p. 1861.) This act was declared unconstitutional by this court in the case of *County of San Diego* v. *Childs*, 217 Cal. 109 [17 Pac. (2d) 734], on the ground that it impaired the contract rights of the landowners by subjecting them to certain burdens not imposed upon them at the time the original bonds were issued. In 1933 the legislature enacted a statute along the same general lines of, but much broader in scope than, the act of 1931, declared unconstitutional in the Childs case. This act is known as the "Assessment Bond Refunding Act of 1933" (Stats. 1933, p. 1915). We will refer to this act hereinafter as the Refunding Act of 1933. It was also declared unconstitutional by this court in the case of *County of Los Angeles* v. *Rockhold*, 3 Cal. (2d) 192 [44 Pac. (2d) 340, 100 A. L.

R. 149], on the ground that it impaired the contract rights of both the landowners and the bondholders. It impaired the rights of the former by subjecting them, without their consent, to certain burdens not imposed upon them by the act under which the bonds were originally issued, and it impaired the rights of the bondholders by materially changing the form of their security without their consent. The amendment of 1935 was designed to meet the objections to the 1933 act, which this court held in the Rockhold case were fatal to its validity. It will not be necessary for us to again review the legislative history of this state relative to the formation of special assessment districts for the purpose of paying for improvements therein constructed by the issuance of bonds against the property within said districts. Nor need we refer to the decisions of this and the appellate courts of this state in which the various acts of the legislature have been reviewed and the law applicable thereto construed and applied. These matters are thoroughly covered in our decision in the Rockhold case, which should be read and considered in connection with our discussion of the questions involved in the present proceedings.

The purpose of the legislation enacted by the three statutes just referred to was an attempt on the part of the legislature to relieve the situation existing in a large number of improvement districts in the state where improvement bonds have been issued and made payable by the levy of an *ad valorem* tax upon the property in the entire district. The condition brought about by this system of taxation is aptly described in the Rockhold case. The plan proposed by each of said relief or refunding statutes was to eliminate the *ad valorem* method of taxation and substitute in its place, under conditions set forth in said respective statutes, the system in vogue in many improvement districts, of a specific assessment upon each parcel of land within the district in proportion to the benefits which such parcel receives by reason of the improvement. This assessment, under said refunding statutes, in case it is not paid in cash, is to be evidenced by a bond issued against the specific parcel of land described in said assessment. The 1931 act was made applicable only to bonds issued under the Acquisition and Improvement Act of 1925. The two later acts were made applicable to all improvement districts where the

bonds issued were made payable by the levy of the *ad valorem* tax.

The refunding proceedings now under review, like those considered in the Rockhold case, were instituted to refund bonds of Improvement District No. 67 of the County of Los Angeles. The same conditions existed in said district at the time said refunding proceedings were instituted as were shown to exist at the time the refunding proceedings involved in the Rockhold case were instituted as set forth in the decision in that case, except that the amount of delinquency on the bonds of said district had increased from the sum of $43,185.26, the amount delinquent at the time the proceedings in the Rockhold case were instituted, to the present sum of $45,512.50.

The present refunding proceedings were commenced by the adoption by the board of supervisors on the 18th day of November, 1935, of a resolution declaring its intention to refund the outstanding indebtedness of Acquisition and Improvement District No. 67, pursuant to the provision of the Refunding Act of 1933 as amended by Statutes of 1935, chapter 729 thereof. The resolution set forth all the requirements of the statutes then in force, and no question is raised as to any informality, irregularity or illegality existing in said resolution, and we will therefore assume its correctness. The plan proposed by said resolution provided that the County of Los Angeles would pay one-third of said delinquency, the bondholders would forego and cancel one-third of the amount due them upon the bonds of said district, and specific lien bonds would be issued and sold to pay the other third of said delinquency. The resolution fixed a time and place when and where any objections against the proposed refunding plan might be made by any person interested or by any owner of property within said district. At the time fixed for the hearing of said matter, no protest or objection having been made to the proposed refunding plan, it was ordered by the board of supervisors of said county that the refunding of the outstanding indebtedness of said district be made in accordance with said resolution of intention. It was further ordered at said hearing that the county surveyor of said county make a diagram of the property upon which a reassessment was to be levied and prepared a reassessment for the purpose of refunding the outstanding indebtedness of

said district in pursuance of the Refunding Act of 1933 as amended in 1935. The county surveyor refused to comply with this order and this proceeding was instituted for the purpose of compelling compliance on the part of said county surveyor with said order.

The 1933 act was held in the Rockhold case to be unconstitutional in that it impaired the obligation of the contract of the landowners by changing such owners' obligations in certain respects without their consent. That act contained a provision that the question of refunding the indebtedness of the district should be submitted to a vote of the electors thereof, and if a majority of the qualified electors voting at such election voted in favor of such proposition, then the legislative body which ordered the holding of the election would have jurisdiction to proceed with the refunding of such indebtedness as provided in said act. It was contended by the petitioner in said action that as such an election was held in said district and a majority of the qualified electors thereof voting at such election voted in favor of the proposition to refund said indebtedness, the nonconsenting landowners were bound by the majority vote cast at such election. We disagreed with this contention for the reason that the original bonds of Acquisition and Improvement District No. 67 were not issued in response to or under any provision of law calling for a majority vote of the electors of said district and, therefore, the rule in *Mulcahy* v. *Baldwin,* 216 Cal. 517 [15 Pac. (2d) 738], and *Palo Verde Irr. Dist.* v. *Seeley,* 198 Cal. 477 [245 Pac. 1092], did not apply. We held, however, under the principle announced in those cases, that ''It necessarily follows that, if the 1933 refunding act *required* the consent of the *owners* of over one-half of the area involved it would meet all the objections of respondent as far as the contract clause is concerned. There would be no impairment of the obligations of the contract as far as the landowners are concerned because they would have consented to the change made in their respective obligations.'' It was, no doubt, in response to this ruling in the Rockhold case that the legislature in 1935, in its amendment to the Refunding Act of 1933, caused to be inserted therein a provision requiring the written consent of the owners of a majority in area of the lands in

the district be filed with the board approving the reassessment plan before the board of supervisors or other legislative body acting thereon could order said reassessment and the refunding of said bonds. This provision is to be found in section 4 of the amendment enacted in 1935. This provision of the statute was fully complied with. The owners of a majority in area of lands within the district filed their written consent to the plan of refunding said bonds, and the board of supervisors so determined and thereupon ordered by resolution the refunding of said bonds as proposed by said resolution of intention. Respondent does not question the aptness of the language used by the legislature in the 1935 amendment to achieve the result which we held in the Rockhold case would follow from a compliance with such legislative enactment. He contends, however, that a majority of the landowners have no authority to bind the minority as to contracts between the minority and the bondholders. This question was given thorough consideration in our opinion in the Rockhold case and we see no reason for departing from the conclusion reached in that case. We can see no distinction in principle between the plan provided in the amendment of 1935 of procuring the consent of the landowners, from that followed and approved by the court in the cases of *Palo Verde Irr. Dist.* v. *Seeley, supra,* and *Mulcahy* v. *Baldwin, supra,* cited in the Rockhold case and which we there relied upon as supporting our statement therein that the owners of a majority in area of lands within the district may bind the minority landowners therein. It is our conclusion, therefore, that the landowners of the district have acquiesced in and agreed to the proceedings to refund the bonds of the district, and therefore any change through the refunding proceedings in the terms of the contract between them and the bondholders which existed by reason of the original bond issue did not constitute an impairment of their contracts. There can be no impairment of a contract where the parties thereto have consented to such change. (*Shepard* v. *Barron,* 194 U. S. 553 [24 Sup. Ct. 737, 48 L. Ed. 1115].)

█ In the Rockhold case we held that the Refunding Act of 1933 was unconstitutional for the reason that it impaired the contract of the bondholders in that no provision was made for taking care of the nonconsenting bondholders.

In the 1935 amendment it is provided by section 7 thereof, amending section 12 of the 1933 act, that "The reassessment shall not be recorded until the holders of all such bonds and coupons (referring to the original bond issue) have contracted to exchange such bonds and coupons in the refunding proceeding, or if all holders of outstanding bonds and coupons do not so contract, the reassessment shall not be recorded until adequate provision has been made as required in this act for the retirement of said bonds and coupons of nonconsenting holders."

Section 15 of the act as amended provides that, "In the event that the holders of one or more of the outstanding bonds do not enter any contract with the legislative body to refund the same, nevertheless if the holders of seventy-five per cent or more of the outstanding bonds do contract with the legislative body which conducts the refunding proceedings for the refunding of the bonds owned or held by them, said legislative body shall have authority to refund all of the bonds of said district under the provisions of this act, but in such event, prior to recording the reassessment levied under this act, sufficient moneys to adequately provide for the retirement or payment of the bonds of the nonconsenting holders must be provided and set aside in the proper fund for that purpose."

The same section also provides, "Wherever any moneys are placed in any fund for the retirement or payment of the bonds of nonconsenting holders the said moneys shall be used only for that purpose and after all of the bonds of said nonconsenting holders have been paid or retired any sum remaining in said fund shall be returned to the city or county or city and county which advanced the same."

These provisions of the act as amended, in our opinion, fully protect the rights of the bondholders. The consenting bondholders receive the cash payment and refunding bond provided for under the refunding plan and which they have agreed to accept in full payment of their original bonds. The nonconsenting bondholders are taken care of by the creation of a fund out of which their bonds, together with their coupons, are to be paid in full. There is no merit in respondent's contention that only the bonds of the nonconsenting bondholders are to be paid and no provision is made for the payment of the coupons. That por-

tion of section 12 of the act as amended and quoted above expressly provides that adequate provision shall be made for the "retirement of the bonds and coupons of non-consenting bondholders". Besides this provision of the act, section 15 as amended provides that wherever "bond" or "bonds" is used in the act, the word shall be construed as including outstanding unpaid interest coupons; and that whenever "bondholder" is used it shall be construed to mean and include any holder of outstanding and unpaid interest coupons. These provisions of the act expressly protect the nonconsenting bondholder and provide for the full payment not only of all bonds owned by him but also of all coupons which may be outstanding and unpaid. There is nothing in the act as we understand it which requires the non-consenting bondholder to consent to the payment of his bond before its maturity. On the other hand, the position and rights of the nonconsenting bondholders are unaffected by the refunding proceedings. He may, after the institution and completion of said proceedings, as he could have done had no such proceedings been commenced, hold his bonds and collect when due his interest coupons and the principal of the bond at its respective dates of maturity. In fact, as we view this question, his security will be greatly improved rather than impaired as a result of the refunding proceedings. At present he can secure payment of his bonds only in the event there has been sufficient money raised by the assessment on the property of the district to meet the bonds and coupons as they fall due. Upon the completion of the refunding proceedings, the nonconsenting bondholder has a fund provided by the county out of which all his bonds and coupons will be paid in full as they become due. Surely the nonconsenting bondholder has no ground of complaint that the refunding proceedings provided by the act in any way impair his contract or prejudice his rights to the least extent.

 We will now pass to the contention of respondent that said refunding act as amended in 1935 violates article IV, section 31 of the Constitution of the state, which denies to the legislature the power to authorize any county to make a gift of public money to any person or individual. Respondent contends that the payment by the county of any part of said delinquent assessments against the property

of the landowners within said district is a gift of the money so paid to the private owners of said lands and is therefore within the inhibition of the section of the Constitution just referred to.

This same contention was made in the case of *County of San Diego* v. *Hammond*, S. F. No. 15604 (*post*, p. 709 [59 Pac. (2d) 478]), this day decided. While the refunding proceeding involved in that case was instituted under a different statute than the Refunding Act of 1933 as amended in 1935, chapter 10 of the statute of 1935, in pursuance of which the proceedings in the case of *County of San Diego* v. *Hammond, supra*, were instituted, and the 1935 amendment to the Refunding Act of 1933, were enacted at the same session of the legislature and the purpose of each act was the same; that is, its purpose was to relieve property in certain improvement districts of the state from the excessive burden of taxes against it and to restore said property to the tax rolls of the various counties in which said improvement districts are located. Section 13 of the 1935 amendment to the Refunding Act of 1933 contains a paragraph showing the necessity of such legislation and is similar in its import to a corresponding paragraph in section 10 of the act under which the proceedings in the San Diego case were instituted and were being carried on. The material parts of this section are set out in our opinion in the San Diego case. It is not necessary to repeat here the language of section 13 of the 1935 amendment of the 1933 Refunding Act, but by reference thereto it will be observed that the recital therein as to the purpose and object to be attained by said act is substantially the same as that stated in section 10 of chapter 10 of the laws of 1935. The resolution of intention of the board of supervisors of the County of Los Angeles declaring the intention of the board to refund said indebtedness, while not as full as that passed by the board of supervisors of the County of San Diego, excerpts of which are set forth in the opinion in the San Diego action, does state: ''That the public interest, convenience and necessity require that proceedings be taken for the refunding of the indebtedness of the Acquisition and Improvement District No. 67 of the County of Los Angeles, State of California, and it is the intention of the Board of Supervisors to proceed under the provisions of an act of the Legislature of the State of Cali-

fornia, designated and known as the Assessment Bond Refunding Act of 1933, approved June 5, 1933, Statutes 1933, page 1915, and of all acts supplementary thereto, incorporated by reference therein and amendatory thereof, to refund the said indebtedness.''

From the statement of facts in the Rockhold case it is shown that 93 per cent of the property in said district was sold for delinquent taxes of 1933–1934. While the record before us does not show the percentage of delinquency for the year 1934–1935, the resolution of the board of supervisors does show that the present amount of the delinquency on the bonds of said district had increased from the sum of $43,185.26, the amount delinquent at the time the proceedings in the Rockhold case were instituted, to the sum of $45,512.50, the amount delinquent at the commencement of the present proceedings. From this showing we cannot assume that the percentage of the property sold for taxes in 1934–1935 was any less than that sold during the previous year. It thus appears that only 7 per cent of the property in the district is upon the tax rolls of said county and is contributing to the operating expense of county government. It was undoubtedly upon this condition of affairs that the county board of supervisors found that the public interest of the county required that proceedings be taken under the Refunding Act of 1933, as amended in 1935, to refund said bonded indebtedness. We have, therefore, the declaration of the legislature and of the board of supervisors of the county that the purpose for which the county is to pay a portion of said bonded indebtedness and thereby restore the property of the district which has been sold for delinquent assessments to the tax rolls of the county is in furtherance of the interests of the public. We stated in the case of *County of San Diego* v. *Hammond, supra,* that this combined declaration was entitled to great weight, and that the mere fact that the bondholders or the property owners, or both, benefit from such payment did not render the payment or appropriation invalid. We held, in the case of *County of San Diego* v. *Hammond, supra,* that the act under which the bonds in that case were to be refunded was not subject to the constitutional objection that it authorizes a gift of public money to an individual or to any private purpose. The two cases are so similar, both as to their facts and to

the law applicable to each, that the conclusion at which we arrived in the San Diego case must control our decision in the present action. Upon the authority, therefore, of *County of San Diego* v. *Hammond, supra,* the contention of the respondent that the act in question is unconstitutional in that it authorizes or permits the expenditure of county funds for a private purpose cannot be sustained.

The further claim is made that the bondholders have not executed valid consents to the proposed refunding proceeding. This question does not arise at the present stage of said proceedings. The contract of the bondholders with the county to exchange their bonds for those issued under the refunding proceedings may be made at any time and must be made before the recording of the reassessment (sec. 12). The refunding proceedings, as we have seen, have only advanced to the point where the respondent, as county surveyor, is required, if the act is valid, to prepare a diagram of the property upon which said assessment is to be levied and to make such reassessment. If valid contracts have not already been executed by the bondholders, they may execute new or corrected contracts at any time before the recordation of the reassessment. Section 15 of the act as amended also provides that there must be on file with the body conducting the refunding proceedings the written consent of the holders of 75 per cent or more of the outstanding bonds to refund the same prior to the recording of the reassessment. Up to the present time the bondholders are not called upon to act in said proceedings, and whatever action they may have taken therein can in no way affect the legality of said proceeding. We might note here that, at the date of respondent's refusal to prepare a diagram of the lands in the district, holders of bonds equal to 80½ per cent of the entire outstanding issue had filed with the board of supervisors of the county what purported to be their written assent to exchange their bonds for bonds issued under the refunding proceedings. Since that time and before the commencement of this action, the owner of the remaining 19½ per cent of said bonds had also filed like written assent. The filing of these written assents, even though they may be in legal form and signed by all of the holders of outstanding bonds, can have no bearing upon any issue now before us. If the refunding proceedings leading up to the demand upon respond-

ent to prepare said diagram were correctly taken, and we think they were, and if the Refunding Act of 1933, as amended in 1935, is valid, then it was the duty of the respondent to comply with the requirements of said act in respect to the preparation of said diagram, without regard as to the wishes of the bondholders or as to any action which they had taken or may have omitted to take.

The claim is also made by respondent that, in addition to the reasons advanced by him and heretofore discussed, chapter 729 of the 1935 statute which purports to amend the 1933 act is void because the legislature by the later act sought to amend an act which had been declared to be unconstitutional by this court. While the authorities upon this subject are not in entire accord, we are of the opinion that by far the decided weight of authority, and the better and more logical rule, is that announced in the following authorities to the effect that an amendment to a statute which for any reason has been declared invalid constitutes a valid enactment. (Lewis' Sutherland on Statutory Construction, 2d ed., 435; 25 R. C. L., sec. 158, p. 906; *State* v. *Silver Bow Refining Co.*, 78 Mont. 1 [252 Pac. 301–304]; *Allison* v. *Corker*, 67 N. J. L. 596 [52 Atl. 362, 60 L. R. A. 564].) A discussion of the few cases which are out of harmony with this rule would serve no useful purpose.

Finally the respondent attacks the validity of section 30 of the 1935 act providing for a proceeding *in rem* to test the validity of the reassessment resulting from the refunding proceedings. Respondent, as we understand his position, concedes the binding effect of such validating proceedings in so far as they affect the rights of the landowners within the district and the bondholders who have either filed their consent to the refunding proceedings, or who may appear in the litigation brought to test the validity of said reassessment. In other words, respondent is concerned only with the rights of the nonresident and nonconsenting bondholders. We think this contention is without merit. If the proceedings are held to be valid, then their bonds are adequately and thoroughly protected by money set apart for their payment under section 15 of said act. If the reassessment is declared invalid then the attempted refunding proceedings are a nullity and in no way affect any rights of any of the bondholders. Upon this subject we might further say that the

form of action to test the validity of said reassessment bonds, as provided in section 30 of said act of 1933 as amended in 1935 differs in no material respect from the form of action provided in various other statutes of this state for the purpose of testing the validity of the several types of bonds issued under those respective statutes. Such statutes and the proceedings thereunder have in various instances been approved by the courts. (*Cullen* v. *Glendora Water Co.*, 113 Cal. 503 [39 Pac. 769, 45 Pac. 822, 1047]; *In re Central Irr. Dist.*, 117 Cal. 382 [49 Pac. 354]; *People* v. *Linda Vista Irr. Dist.*, 128 Cal. 477 [61 Pac. 86]; *Fogg* v. *Perris Irr. Dist.*, 154 Cal. 209 [97 Pac. 316]; *Miller* v. *Perris Irr. Dist.*, 85 Fed. 693.)

We find no irregularities in the refunding proceedings now before us. As the act under which said proceedings are carried forward is a valid enactment of the legislature, it follows that it is the duty of the respondent to make and prepare a diagram of the property within said Improvement District No. 67 of the County of Los Angeles, upon which a reassessment is to be levied, and also to prepare a reassessment for the purpose of refunding the outstanding indebtedness of said district.

Let the writ issue as prayed for.

Shenk, J., Langdon, J., Thompson, J., Waste, C. J., and Seawell, J., concurred.