WASTE, C. J.
 

 In this proceeding in
 
 mandamus
 
 an alternative writ was issued. On the return thereof the controversy was submitted upon an agreed statement of facts.
 

 The Nevada Irrigation District was organized in 1921 under the California Irrigation District Act. Its principal revenue
 
 *734
 
 was derived from the delivery of water to the Pacific Gas and Electric Company for power purposes, the water being later released below the power plants of the company for distribution to the landowners of the district for irrigation and other uses. Subsequent to its organization, the district issued bonds to the amount of $8,100,000, maturing each year beginning 1933, and bearing interest at the rate of 5% per cent. No revenues were received under the power contracts until 1928. Thereafter, owing to a shortage of water, the income was not sufficient to pay the interest on the outstanding bonds. In 1931, the attention of the legislature was directed to the critical situation of the Nevada Irrigation District and other similar districts in the state, with the result that, at its session that year, an emergency measure was passed which amended section 32a and added sections 32b to 32e, inclusive, to the California Irrigation District Act (Stats. 1931, p. 777), providing for the adoption by irrigation districts of a plan for refunding their outstanding indebtedness. Pursuant to that act, as amended, the Nevada Irrigation District adopted a refunding plan (herein referred to as the 1931 plan), which was approved, as required, by the California Bond Certification Commission and by the electors of the district. The holders of all of the district’s bonds also approved the plan, and exchanged their bonds for bonds of the first refunding issue. These refunding bonds provided for fixed interest at the rate of 4 per cent and contingent interest (payable only when earned) at the rate of 1
 
 y2
 
 per cent. Provision was made in section VIII of the plan for subsequent modification of its terms and conditions, if that should be deemed desirable by the district, such modification to be accomplished by the approval of the California bond certification commission and the consent of the holders of 75 per cent in principal amount of the refunding bonds then outstanding. The plan provided for a special reserve fund for emergency purposes, and a sinking fund for the retirement of refunding bonds. Subsequently, the income of the district not being sufficient to build up the required reserve fund, and no money being available for the creation of the sinking fund, the district “deemed it desirable” to secure a modification of the terms of the 1931 plan, and on January 1, 1937, submitted to the bondholders such modification whereby the rate of fixed interest was reduced from
 
 *735
 
 4 per cent to 3 per cent (with
 
 2y2
 
 per cent contingent interest). On June 22, 1937, the California districts securities commission (successor to the California bond certification commission) approved the modification, and on August 11, 1937, a special election was held for the purpose of securing the assent of the qualified electors of the district. At such election a majority of the votes were cast in favor of the modification, and it was approved by 90 per cent of the holders of the refunding bonds issued under the 1931 plan.
 

 Petitioner, a nonconsenting bondholder, contends that he is not bound by the terms of the 1937 modification. He presented to the respondent treasurer the coupon maturing July 1, 1937, in the amount of $20, originally attached to his bond. Although there are funds in the treasury of the district available for the purpose, the treasurer refused to pay any amount in excess of $15, on the ground that the interest owing on the bond was reduced from 4 per cent to 3 per cent after January 1, 1937. To avoid a multiplicity of suits by other nonconsenting bondholders, petitioner seeks a determination by this court, under sections 1138-1140 of the Code of Civil Procedure, of the following questions: Whether or not the modification of the 1931 plan is valid, legal and effective; whether such modification is binding upon petitioner and any other bondholders who did not, by their affirmative acts, assent to the modification; and whether the respondents are not under a duty to pay the petitioner the full face amount of the fixed interest coupons attached to his bond. If the court shall find in petitioner’s favor, he asks that a peremptory writ issue ordering the respondent treasurer to pay to petitioner the amount of the present coupon and of all subsequent coupons at the rate of 4 per cent per annum.
 

 Petitioner urges that, inasmuch as there was no provision in the California Irrigation District Act of 1931,
 
 supra,
 
 authorizing a district, adopting the plan therein provided for the refunding of its outstanding indebtedness, to subsequently modify that plan, section VIII of the 1931 plan above referred to, and which permitted such modification, was without authority of law, and the modification made pursuant thereto is null and void. Section 32a of the act adopted in 1931 declares that the board of directors of any irrigation district which desires to refund its outstanding indebtedness
 
 *736
 
 may submit to the California bond certification commission “its proposed plan for funding or refunding such bonds”, and upon approval of the plan by the commission, the board of directors of the district shall call an election for the purpose of authorizing the issuance of such refunding bonds. It places no restriction upon the features to be incorporated in the plan, other than that the maturity of the bonds shall not be more than fifty years from their date and the rate of interest shall not exceed 6 per cent per annum. Even though there was no express statutory authority for the inclusion of the modification clause in the 1931 plan, it was apparently not deemed unfair or unreasonable, for it received the approval of the bond certification commission and of the electors of the district, and was ratified by the bondholders themselves,
 
 all
 
 of whom exchanged their bonds for the refunding bonds. Each of these latter bonds contained on its face the provision that it was issued under the 1931 plan and was subject to its terms and conditions, “to all of the provisions of which Refunding Bonds [including section VIII of the plan here under attack] the bearer or registered owner of this refunding bond by his acceptance hereof assents”.
 

 The validity of these refunding bonds of the Nevada Irrigation District was the subject of consideration by this court in
 
 Mulcahy
 
 v.
 
 Baldwin,
 
 216 Cal. 517 [15 Pac. (2d) 738], a proceeding to compel the secretary of the board of directors of the district to countersign the bonds. An objection to the bonds in that case was based upon the contention _ that the contract rights of the holders of outstanding bonds who might not elect to convert their holdings into refunding bonds, as well as the rights of contract with the landowners upon the organization of the district, would be impaired by certain provisions of the 1931 Irrigation District Act. The court there stated (p. 526) : “It is elementary that there can be no impairment of a contract by a change thereof
 
 if the change is effected with the consent of the contracting party affected thereby.”
 
 (Italics added.)
 

 Petitioner claims there is no express or implied provision in the bonds for modifying the interest rate of bonds after their issuance. Section 32d of the Irrigation Act provides that if interest on the bonds of the district is subject to any limitation with respect to its payment, a statement of such limitation must be contained in the bond. Since the
 
 *737
 
 1931 plan contained numerous limitations upon the payment of interest, certain of which could not be determined in advance,—being to some extent dependent on the modification provided for—the only feasible method of incorporating in the bond a statement of such limitations was by setting forth the entire plan, including the provision for its modification. Having accepted the refunding bond with knowledge of the express declaration therein that it was issued under the 1931 plan, and the provision for modification being a part of that plan, petitioner cannot now complain that the district had no authority to insert in the bond any provision that the rate of interest might be changed by subsequent proceedings.
 

 Petitioner further contends that the California districts securities commission had no authority to give consent to such a change in the interest rate of the bonds. The approval of the commission was required by the Irrigation District Act as a condition precedent to the effectiveness of the plan provided for in section 32a. Accordingly, such a plan (containing a proviso permitting a subsequent modification of its terms and conditions without limitation) having been submitted to and having received the required approval of the commission, and having been voluntarily approved by the electors of the district and the bondholders, it cannot now be urged that the commission had not the right to consent to that to which all the parties involved had agreed it might consent—a modification of the plan. As an indication that such a provision for modification was regarded by the legislature as reasonable and lawful, that body, at its 1937 session, passed an emergency measure amending section 32a (Stats. 1937, p. 457), by expressly declaring that a provision for modification may be inserted in a plan adopted under the act as amended in 1931, and if the proposed modifications meet with the approval of the commission, the directors of the district shall call an election to authorize such modifications, a majority vote only being required for such authorization. The urgency clause attached to this amendment recites that certain of the districts “have reserved as a condition to said plan so approved [by the Commission and the electors] the right to modify such plan prior to its consummation and thereafter have found it necessary to modify such original, proposed plans in one or more respects”, the purpose of the 1937 amendment being to immediately clarify the former
 
 *738
 
 statute so as to clearly authorize modification of the proposed plans of the districts for refunding their bonded indebtedness.
 

 Petitioner states that the “statutes will be searched in vain for any authority to give the holders of three-fourths of outstanding bonds authority to bind the other bondholders to a modification of the terms of the bond”, citing in support of his contention the decision of this court in
 
 County of Los Angeles
 
 v.
 
 Rockhold,
 
 3 Cal. (2d) 192 [44 Pac. (2d) 340, 100 A. L. R. 149], That ease is not in point. The refunding proceedings there involved were instituted pursuant to the provisions of the Refunding Special Assessment Bond Act of 1933 (Stats. 1933, p. 1915), providing (sec. 15) that the refunding could take place when 75 per cent of the holders of the outstanding bonds consented. The court held that the act did not adequately safeguard the rights of the 25 per cent of dissenting bondholders, and was therefore unconstitutional, saying: “There can be no doubt that it is indispensable, from a constitutional standpoint, so far as bondholders are concerned, that either 100 per cent consent to the change or that the dissenting bondholders be so taken care of that no impairment of their contract ensues.” That ease is clearly distinguishable from the present proceeding, where the refunding plan was adopted and assented to by
 
 all
 
 of the bondholders. A sufficient answer to petitioner’s contention is that he did deposit his original bond for cancellation and accept in its place the refunding bond specifically incorporating in its terms the provision for modification of the 1931 plan with the “approval of the . . . holders of seventy-five (75) per cent in principal amount of the Refunding Bonds then outstanding”, such modification to be “binding upon the holders of the then issued and outstanding Refunding Bonds”. Upon this acceptance of the refunding plan and the cancellation of the original bonds, a change was effected in the affairs of the district, and its board of directors was justified in relying upon the agreement of the bondholders, including petitioner, that the plan might subsequently be modified, “if it should be deemed desirable”.
 

 The next, assertion of petitioner is that the 1937 modification, by its terms, would become effective and binding on all the bondholders only when an election was held in the district for the purpose of approving the modification, and that there was no authority for such an election when the modification was drawn and the bonds were issued. The
 
 *739
 
 modification was submitted to the bondholders on January 1, 1937. It was approved by the California districts securities commission on June 22d, and the special election called for the purpose of securing assent of the electors of the district was held on August 11th. As previously stated, the legislature, in 1937, amended section 32a of the California Irrigation District Act (Stats. 1937; p. 457) by providing that “When any district shall have submitted its proposed plan for funding or refunding such bonds to the California districts securities commission, and as one of the terms or conditions of such plan, has reserved the right to modify such plan one or more times, and said commission shall have approved such plan, and when the board of directors of such district shall thereafter desire to modify such plan, such .board of directors may submit the proposed modifications of such plan for approval to said California districts securities commission”, and, upon such approval, shall call an election for the purpose of authorizing such modifications, a majority vote only being required. Recognizing that certain districts had reserved “as a condition to said plan so approved the right to modify such plan prior to its consummation and thereafter have found it necessary to modify such original proposed plan in one or more respects”, the legislature declared this amendment to be an urgency measure, to go into immediate effect in order to clarify the statute so as to clearly authorize districts to modify their proposed plans for refunding their bonded indebtedness, thus avoiding the necessity for advancement by such districts of “large cash payments for maturing bonds and interest coupons on July 1, 1937, leaving them without sufficient funds to enable them to operate properly and efficiently their distribution works”. This act was signed by the governor and became effective on May 4, 1937. Therefore, when the final procedural step was taken, that is, the election for the purpose of approving the modification, the 1937 amendment to section 32a was in full force and effect.
 

 Petitioner attacks this amendment as special legislation, and violative of article IV, section 25, subdivisions 11 ■and 19 of the Constitution. In
 
 Mulcahy
 
 v.
 
 Baldwin, supra,
 
 a similar objection was made to the validity of the 1931 amendments to the Irrigation Act. The objection was overruled by the court. The 1937 act is merely an amendment
 
 *740
 
 of section 32a. It applies equally to all irrigation districts which have taken advantage of the statute authorizing a plan for the refunding of their outstanding indebtedness and, as a condition of such plan, have reserved the right to modify it. “A law is general and uniform and affords equal protection in its operation when it applies equally to all persons embraced within the class to which it is addressed, provided that such class is founded upon some natural or intrinsic or constitutional distinction between the persons composing it and others not embraced in it.”
 
 (Ex parte Weisberg,
 
 215 Cal. 624 [12 Pac. (2d) 446].) The question of classification is generally one for the legislative power, to be determined by it in the light of its knowledge of all the circumstances and requirements, and its discretion will not be overthrown unless it is palpably arbitrary.
 
 (Wores
 
 v.
 
 Imperial Irr. Dist.,
 
 193 Cal. 609 [227 Pac. 181].) It will be presumed that the legislature made inquiry to determine whether or not there were evils to be remedied and that the classification made was based upon the result of the inquiry.
 
 (Ex parte Girard,
 
 186 Cal. 718 [200 Pac. 593]; 3 Cal. Jur. Ten-year Supp., p. 803.)
 

 The next complaint of petitioner is that the facts allegedly justifying the urgency feature of the statute “do not show any necessity for the preservation of the public peace, health and safety, and therefore the act did not go into effect until the regular time in August”. Authority is conferred upon the legislature to determine when urgency measures are necessary, and when such necessity has been determined as provided by the Constitution, the judgment of the legislature is final, and will not be interfered with by the courts unless no declaration of facts constituting such emergency is included in the act or unless the statement of facts is so clearly insufficient as to leave no reasonable doubt that the urgency does not exist.
 
 (Hollister
 
 v.
 
 Kingsbury,
 
 129 Cal. App. 420 [18 Pac. (2d) 1006].) We see no reason, in the present instance, for interfering with the legislative determination that an emergency existed.
 

 The final contention of petitioner is that the reduction of interest on bonds already issued was not such a “modification” as was contemplated by section VIII of the 1931 plan. Under that plan the original rate of 5% per cent interest was changed to 4 per cent, with a 1% per cent contingent interest. In the 1937 plan, now under attack, there
 
 *741
 
 was a further change, in that the fixed interest was reduced' to 3 per cent with a
 
 2y2
 
 per cent contingent interest—the aggregate of fixed and contingent interest always remaining at
 
 5y2
 
 per cent. We are of the view that this was such a modification as was contemplated by section VIII. In the last analysis, the change resolves itself into merely a readjustment of the method of paying interest on the bonds, and is essential to preserve the security of the bondholders in accordance with the fundamental principles upon which the 1931 plan was based. Petitioner cannot now be heard to assert, five years after the refunding bonds issued under this plan were approved by this court in
 
 Mulcahy
 
 v.
 
 Baldwin, supra,
 
 that he is not bound by all the terms and conditions clearly and specifically incorporated in those bonds. Ninety per cent of the bondholders agreed that the further modification of the plan in 1937 was fair, equitable and reasonable, and for the best interests of all the bondholders. Because of the form of the refunding bonds, held by the petitioner and the incorporation therein by reference of the 1931 plan, the petitioner will be held to have agreed that even seventy-five per cent of the holders of the refunding bonds could bind the holders of all thereof. We conclude therefore that the directors of the district had the authority, with the consent of the bondholders theretofore given, to modify the 1931 plan with reference to the payment of interest, and to fix such interest on the refunding bonds at 3 per cent in accordance with the terms of the 1937 modification.
 

 J. R. Mason, one of the interveners in this controversy, was the owner of a number of bonds of the Nevada Irrigation District. He exchanged eleven bonds of the original issue for refunding bonds under the 1931 plan, and subsequently purchased additional refunding bonds in the open market. Gilbert Moody, the other intervener, is the holder of certain interest coupons detached from one of the refunding bonds. "On the face of all these bonds appeared the following: “This refunding bond is one of an authorized issue of refunding bonds of Nevada Irrigation District . . . known as its First Refunding Issue, . . . and all issued under and subject to the provisions of a Refunding Plan dated June 1, 1931, to which Refunding Plan reference is hereby made for a statement of . . . the rights of the holders of the refunding bonds and of interest coupons in respect thereto, and the terms and conditions upon which the re
 
 *742
 
 funding bonds are issued and secured, to all of the provisions of which Refunding Plan the bearer or registered owner of this refunding bond by his acceptance hereof assents.” Notwithstanding this provision in the refunding bonds, interveners deny that they are bound thereby. J. R. Mason alleges that, while “expressly repudiating” the 1931 plan, he did exchange eleven of his bonds of the original issue for refunding bonds, and has since purchased thirty-four additional refunding bonds. It is only necessary to say, in reply to the contention of the interveners, that, having accepted the refunding- bonds, they are bound b3 all the provisions contained therein.
 

 Interveners further allege that the district’s obligation to pay interest at the rate of 4 per cent was “to be absolute and unconditional”. A reading of the 1931 plan fails to disclose the use of the words “absolute and unconditional”. The 4 per cent interest was therein referred to as “fixed interest” to distinguish it from the “contingent interest” provided for. In any event, interest was to remain at the rate fixed unless and until there was a modification of the terms and conditions of the plan. The rate of interest to be paid on the bonds was but one feature of the plan which the directors of the district “deemed it desirable” to modify.
 

 The principal contentions made by the interveners and
 
 amicus curiae
 
 have already been disposed of. We do not deem it necessary to discuss other points raised by them.
 

 The legality of the refunding bonds issued under the 1931 plan having been established in the case of
 
 Mulcahy
 
 v.
 
 Baldwin, supra,
 
 and the 1937 modification, having been prepared in accordance with the terms of that plan and having received the approval of the directors and of a majority of the electors of the district, as well as the California districts securities commission and of more than the required 75 per cent of the holders of the refunding bonds issued under the plan, such modification is valid, legal and effective. The non-consenting bondholders, by their agreement lawfully expressed, are bound thereby. The 1937 modification properly relates, among other things, to a change in the rate of interest on the bonds already issued. Petitioner, therefore, is entitled to but 3 per cent interest on his bond, together with the 2% per cent contingent interest, from and after Janu
 
 *743
 
 ary 1, 1937, pursuant to the provisions of the 1937 modification.
 

 The peremptory writ is denied.
 

 Shenk, J., Curtis, J., Edmonds, J., and Langdon, J., concurred.
 

 Rehearing denied.