[No. C009066. Third Dist. Dec. 14, 1993.]

HOWARD JARVIS TAXPAYERS' ASSOCIATION et al., Plaintiffs and Respondents, v.
STATE BOARD OF EQUALIZATION, Defendant;
COUNTY OF LOS ANGELES et al., Interveners and Appellants.

[No. C009490. Third Dist. Dec. 14, 1993.]

HOWARD JARVIS TAXPAYERS' ASSOCIATION et al., Plaintiffs and Respondents, v.
STATE BOARD OF EQUALIZATION, Defendant;
COUNTY OF LOS ANGELES et al., Interveners and Appellants.

COUNSEL

De Witt W. Clinton, David L. Muir, Alvin S. Kaufer, Winfield D. Wilson, Cheryl A. Holland, Nossaman, Guthner, Knox & Elliott, Michelle D. Blakemore, Alan K. Marks, Terry C. Andrus, Adrian Kuyper, Stefen H. Weiss, Thomas C. Agin, James L. McBride, Daniel J. Murphy, William C. Katzenstein and William D. Kenison for Interveners and Appellants.

Daniel E. Lungren, Attorney General, and Robert D. Milan, Deputy Attorney General, as Amici Curiae on behalf of Interveners and Appellants.

Kaye, Scholer, Fierman, Hays & Handler, Pierce O' Donnell, Cruz Reynoso, Marsha E. Durko, Suzanne Tragert and Joy Krystofiak for Plaintiffs and Respondents.

OPINION

**BLEASE, Acting P. J.**—This is an appeal from a judgment declaring that the Orange County Regional Justice Facilities Act (Gov. Code, § 26295 et

seq.) and the County Regional Justice Facilities Financing Act (Gov. Code, § 26299.000 et seq.)[1] are unconstitutional and invalid as in conflict with article XIII A, section 4, of the California Constitution (Proposition 13) and granting an injunction prohibiting the counties to which the Acts pertain from taking action to implement them.

The Acts provide for the adoption and implementation of local sales tax (retail transaction and use tax) ordinances to fund detention and courthouse facilities upon approval by the voters in specified counties.

We will determine that, with one exception, any such ordinance is invalid if not approved by two-thirds of the county's voters, as required by Proposition 13. There is no warrant for relief beyond this declaration and we therefore reverse the judgment with appropriate directions.

### FACTS AND PROCEDURAL BACKGROUND

In 1989 the Legislature, declaring there to be a growing problem of overcrowded county jails, enacted the Acts. (Stats. 1989, ch. 1335, p. 5462.) The Orange County Act creates the Orange County Regional Justice Facilities Commission (§ 26296); the County Act authorizes Humboldt, Los Angeles, Riverside, San Bernardino, Stanislaus, and Ventura Counties to establish a county regional justice facilities financing agency (§ 26299.020). The commission and the agencies (collectively the Agencies) are charged with financing and coordinating the construction, acquisition, furnishing, maintenance and operation of adult and juvenile detention facilities and courthouse facilities. (See §§ 26297, 26299.031.)

To that end the Acts authorize the Agencies to adopt by ordinance a county-wide sales tax of ½ of 1 percent effective if approved by "a majority of the electors voting on the measure . . . ." (§§ 26298.2, subd. (a); 26299.041, subd. (a).) The Acts further provide that prior to the operative date of a tax ordinance so approved, the agency must contract with the State Board of Equalization for its administration and operation. (§§ 26298.16, 26299.049.)

Plaintiffs, Howard Jarvis Taxpayers' Association and three individual taxpayers, commenced this facial challenge to the Acts, shortly after their enactment, seeking a declaration that the Acts are "invalid and void in that

---

[1] We will refer to these enactments respectively as the Orange County Act and the County Act, and collectively as the Acts. All references to a section are to the Government Code unless otherwise indicated.

. . . [they] unconstitutionally authorize[ ] a special district and/or county to impose an ad valorem tax without securing the approval of two-thirds of the voters of the district in violation of Section 4 of Proposition 13, Cal. Const., art. XIIIA." Plaintiffs also requested an injunction forbidding the State Board of Equalization from entering into any agreement to administer the tax. Los Angeles, Orange, Riverside, San Bernardino, and Ventura Counties intervened in defense of the legislation.

The superior court entered a judgment in plaintiffs' favor declaring the Acts void in their entirety and enjoining the State Board of Equalization and the intervener counties from taking any action to implement them.

After the judgment was entered the Legislature amended the Acts "in view of pending court decisions" to provide that at the option of an agency ". . . the [tax] ordinance may be required to be approved by two-thirds of the electors voting on the measure." (Stats. 1990, ch. 527, §§ 1, 2, and 3; §§ 26298.2, subd. (b), 26299.041, subd. (b).)

Los Angeles, Orange, Riverside, San Bernardino, and Ventura Counties (collectively the Counties) appeal from the judgment.[2] In a separate appeal, Los Angeles, Orange, and San Bernardino Counties challenge a postjudgment order awarding plaintiffs their attorney fees under Code of Civil Procedure section 1021.5. On plaintiffs' motion, we ordered the two appeals consolidated.[3]

## DISCUSSION

### I

Proposition 13 provides that: "Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special

[2]Los Angeles County applied to the superior court for a stay of the injunction pending appeal to permit it to create a justice facilities financing agency and allow a measure for a justice facilities retail transactions and use tax ordinance to be put to the voters on the county's November 1990 ballot. The superior court denied the application. The county asked us for similar relief, which we granted. We stayed the injunction to the extent that it would prohibit Los Angeles County from creating a regional justice facilities financing agency and from placing a justice facilities tax measure on the ballot for the county's November 6, 1990, General Election. The measure was defeated at the polls by an almost two-to-one margin.

Subsequently, we granted Orange County's application for a stay to allow it to place a justice facilities tax measure on a May 14, 1991, special election ballot. It was defeated by an almost three-to-one margin.

[3]The order granting the motion for an award of attorney fees stands upon the judgment on the merits. A substantial change in that judgment eviscerates the order, restoring the status quo ante. (Cf. *Miller* v. *California Com. on Status of Women* (1985) 176 Cal.App.3d 454 [222 Cal.Rptr. 225].)

taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district."

In *Rider v. County of San Diego* (1991) 1 Cal.4th 1 [2 Cal.Rptr.2d 490, 820 P.2d 1000] (*Rider*), the Supreme Court reexamined and retracted its earlier pronouncement that Proposition 13 should be strictly construed in the light of the undemocratic nature of the supermajority vote requirements. We are constrained to hew to this line.

The *Rider* majority opinion holds that the term " '. . . special district' would include any local taxing agency created to raise funds for city or county purposes to replace revenues lost by reason of the restrictions of Proposition 13." (1 Cal.4th at p. 11.) It also holds that every tax levied by a "special purpose" district or agency is a "special tax" subject to Proposition 13. (*Id.* at p. 15.) The trial court decision reviewed in *Rider* had couched the question of constitutionality as whether there had been a purposeful circumvention of Proposition 13 in the adoption of the act which formed the taxing agency. (*Rider, supra,* 1 Cal.4th at p. 8.) The *Rider* majority was less concerned with that finding than with establishing a definition for the term "special district" which would avoid evisceration of the constitutional restriction on new taxes by the proliferation of new "local taxing districts to finance municipal functions without securing the requisite two-thirds voter approval." (*Id.* at p. 11.)

■ The test of a "special district," as viewed in *Rider*, is whether "[a] local taxing agency [was] created to raise funds for city or county purposes to replace revenues lost by reason of the restrictions of Proposition 13." (1 Cal.4th at p. 11.) The *Rider* majority, in dicta, suggests that in future cases a "special district" could be shown to have been created when ". . . the new tax agency is *essentially controlled* by one or more cities or counties that otherwise would have had to comply with the supermajority provision of [Proposition 13]. In determining whether such control exists, a variety of considerations may be relevant, including the presence or absence of (1) substantial municipal control over agency operations, revenues or expenditures, (2) municipal ownership or control over agency property or facilities, (3) coterminous physical boundaries, (4) common or overlapping governing boards, (5) municipal involvement in the creation or formation of the agency, and (6) agency performance of functions customarily or historically performed by municipalities and financed through levies of property taxes." (1 Cal.4th at pp. 11-12; see also *Monterey Peninsula Taxpayers Assn.* v. *County of Monterey* (1992) 8 Cal.App.4th 1520, 1527-1528 [11 Cal.Rptr.2d 188].)

In briefs submitted at our request after the advent of *Rider*, the Counties predictably seek to distinguish the Acts from each other and from the San Diego County Regional Justice Facility Financing Act there at issue. They offer nice points of differentiation addressed to factors on the list of potentially relevant considerations advanced in *Rider*.[4]  ██  Responding point by point to this scholasticism would obscure the central inquiry: whether the new taxing district should be classified a "special district" in order to preserve the constitutional restriction on ". . . the ability of local governments to impose new taxes to replace property tax revenues lost under the other provisions of [Proposition 13]." (See *Rider, supra,* 1 Cal.4th at p. 11.) The considerations advanced in *Rider* that "may be relevant" must be weighed with this purpose in mind.

The exclusive purpose of the Orange County Act and the dominant purpose of the County Act are to raise revenue by means of a sales tax to fund the construction and operation of jails and courthouses, including the retirement of debt incurred for existing facilities.[5] (§§ 26297, 26298.18, 26299.031, subds. (a) and (g); 26299.046, subds. (b) and (f).) These activities are squarely within the core functions customarily and historically performed by municipalities and financed through levies of property taxes. Thus, the most significant consideration in the *Rider* factor list is clearly and unequivocally met.[6]

Coupled with that, there is a predominance on the controlling body of each of the potential Agencies of representatives selected by municipalities subject to the restraint of Proposition 13 (§§ 26296.2, 26299.020), geographic congruence with an assemblage of such municipalities (*ibid.*), and significant entanglement with municipal governance among other things, in the utilization of the facilities that would be constructed by the municipalities (e.g., §§ 26295.12, 26297.1, 26298.20). These considerations show no

---

[4]For example, Orange County notes that the commission established by the Orange County Act has the final decision regarding adopting a master plan for the construction of the facilities, and Los Angeles notes that unlike the San Diego County Regional Justice Facility Financing Agency, there is no requirement under the County Act that an agency convey title to the facilities to the board of supervisors on request.

[5]Minor, complementary purposes under the County Act are to reduce pressure on jails by funding counseling programs and programs that afford alternatives to incarceration (see §§ 26299.031, subd. (h), 26299.046, subd. (c)) and to construct "law enforcement facilities" (§ 26299.031, subd. (b)).

[6]Sections 26299.031, subdivision (h), and 26299.046, subdivision (c), part of the County Act, provide for the financing of "any prevention program, as defined in Section 26299.011." At oral argument, counsel representing the Agencies argued that the record contains no evidence whether such programs have been customarily and historically financed through levies of property taxes and we have no warrant to judicially notice that as a fact. The argument, is well taken and nothing we say in this opinion resolves the question whether Proposition 13 applies to the financing of such programs pursuant to the County Act.

significant separation, for purposes of preserving the restraint of Proposition 13 between the municipalities otherwise subject to it and the Agencies claimed to have evaded it.

In light of these considerations, the minor points of variation raised by the counties by reference to the considerations listed in *Rider* are immaterial. In a close case on the more significant factors, we might have to attend to such subtleties, but this is not such a case. If the Acts create entities that are not "special districts," they provide a template for wholesale evasion of the constitutional restraint. Under *Rider*, we cannot give such a construction to the constitutional term "special district." Any agency created under the Acts is a "special district." Save for the exception noted, any tax ordinance approved by the Agencies is invalid if it is not approved by at least two-thirds of the county's voters, as required by Proposition 13.

II

Plaintiffs are not content with the bare application of the supermajority vote requirement to tax ordinances adopted by the Agencies. They requested, and the trial court granted, relief which declares the Acts void in their entirety and enjoins any action to implement them. Orange County suggests that the scope of the relief granted is unwarranted. The suggestion is persuasive, and we will modify the judgment.

In the interest of judicial economy and of avoiding the judicial resolution of unnecessary points, we eschew the question of the propriety of declaring the Acts void for conflict with Proposition 13 prior to the amendment which provided that the Agencies may submit a sales tax ordinance for approval by two-thirds of the electors voting on the measure. We assume for the sake of argument that the Acts were entirely void prior to the amendment. (But see, *Franklin Life Ins. Co.* v. *State Board of Equalization* (1965) 63 Cal.2d 222, 227-230 [45 Cal.Rptr. 869, 404 P.2d 477].)

In a case involving relief that looks only to the future, we address the matter in the present tense. (See, e.g., *Miller* v. *California Com. on Status of Women* (1984) 151 Cal.App.3d 693, 697 [198 Cal.Rptr. 877].) If the Acts as amended are valid, their prior invalidity on constitutional grounds is immaterial. (E.g., *County of Los Angeles* v. *Jones* (1936) 6 Cal.2d 695, 708 [59 P.2d 489].) There is no basis for a claim that the Acts are invalid for conflict with Proposition 13 as to an ordinance adopted and approved by a two-thirds majority of the voters in accordance with the amended provisions. In light of our determination that approval by a simple majority vote will not suffice, there is no reason to suppose that the Agencies will attempt to obtain

approval except under the amended provisions. The only relief which is warranted is the declaration of our determination.

## DISPOSITION

The judgment and the order after judgment awarding attorney fees are reversed and the matter is remanded with the following directions. The superior court shall, upon appropriate application, reconsider the issue of an award of attorney's fees in light of this opinion. The superior court shall render a judgment consisting of the declaration: "Any retail transactions and use tax ordinance under the Orange County Regional Justice Facilities Act (Gov. Code, §§ 26295 et seq.) or, with the exception of an ordinance limited to 'any prevention program, as defined in Section 26299.011,' any retail transaction and use tax ordinance under the County Regional Justice Facilities Financing Act (Gov. Code, §§ 26299.000 et seq.) is invalid if it is not approved by at least two-thirds of the county's voters, as required by section 4, article XIIIA." The parties shall bear their own costs of this appeal.

Davis, J., and Scotland, J., concurred.