[No. 23821.   Department One.   October 25, 1932.]

THE STATE OF WASHINGTON, *on the Relation of Benton County Columbia Company, Appellant,* v. HARRY FORSYTH, *as Treasurer of Columbia Irrigation District, et al., Appellants.*

THE STATE OF WASHINGTON, *on the Relation of Nora White, Respondent,* v. HARRY FORSYTH, *as Treasurer of Columbia Irrigation District, et al., Appellants.*[1]

[1]Reported in 15 P. (2d) 268.

*Charles L. Powell,* for appellant Forsyth.

*M. M. Moulton,* for appellant Columbia Irrigation District.

*Graves, Kizer & Graves,* for appellant Benton County Columbia Company.

*Andrew Brown,* for respondent.

PARKER, J.—By consolidation of these two mandamus actions in the superior court for Benton county, and by these appeals from the judgment of the superior court rendered therein, this has become principally a controversy between the relator Columbia Company, the owner of certain bonds of series B and C of the first issue of bonds of the Columbia Irrigation District, and the relator White, the owner of all the bonds of series A of the second issue of bonds of that district. Each claims preference right of payment from moneys in the bond fund of the district in the hands of its treasurer, which are proceeds of assessments levied to raise funds to pay matured interest and principal of the bonded indebtedness of the district.

While Forsyth, as treasurer of the district, was the defendant in both actions in the superior court, and is an appellant in this court, his particular interest here is that the law of the case be correctly settled, to the end that he may be thereby advised as to proper application of money similarly situated, which he may be called upon in the future to pay out of the bond fund of the district.

The irrigation district has been, since prior to May, 1918, a duly organized irrigation district under the laws of this state. It lies wholly within Benton county. On May 1, 1918, the district issued its first issue of bonds in the total sum of $60,000, in ten series, designated A to J, inclusive, payable annually on the first day of May of each of the years of 1929 to 1938, in-

clusive, with interest at six per cent per annum, evidenced by interest coupons payable semi-annually on November 1, 1918, and on May 1 and November 1 of each year thereafter.

Series A of that issue, maturing May 1, 1929, aggregating $3,000, have been paid in full. Series B of that issue, maturing May 1, 1930, aggregating $3,600, all remain unpaid, except some past matured interest thereon. Series C of that issue, maturing May 1, 1931, aggregating $4,200, all remain unpaid, except some past matured interest thereon. These two unpaid series of the first issue are all owned by relator Columbia Company.

On January 1, 1919, the district issued its second issue of bonds in the total sum of $440,000, in ten series, designated A to J, inclusive, payable annually on the first day of January of each of the years 1930 to 1939, inclusive, with interest at six per cent per annum, evidenced by interest coupons payable semi-annually on July 1, 1930, and on January 1 and July 1 of each of the years thereafter.

Series A of that issue, maturing January 1, 1930, aggregating $22,000, all remain unpaid, except some past matured interest thereon. Series B of that issue, maturing January 1, 1931, aggregating $26,400, all remain unpaid, except some past matured interest thereon. Bonds numbered 64, 65, 66 and 67 of series A of that issue, aggregating $2,000, are owned by relator White.

On January 2, 1930, White presented to the treasurer of the district her bonds numbered 64, 65, 66 and 67 of series A of the second issue, and demanded payment of the matured principal and unpaid matured interest thereon, which payment was by the treasurer refused. At that time, there was sufficient money in the bond fund to pay White's bonds numbered 64, 65, 66 and 67 of the first series of the second issue, but not

nearly sufficient money in the bond fund to pay those bonds and others of the same series of the second issue, all aggregating $22,000 and all having matured January 1, 1930. On June 25, 1931, White commenced her mandamus action against the treasurer in the superior court for Benton county, seeking the compelling of payment of her bonds by the treasurer from money in the bond fund. At that time, the series B and C bonds of the first issue owned by the Columbia company had matured.

On October 1, 1931, the Columbia Company presented to the treasurer its matured series B and C bonds of the first issue, and demanded payment of the matured $7,800 principal thereof and unpaid matured interest thereon, which payment was refused. On the same day, the Columbia Company commenced its mandamus action against the treasurer in the superior court for Benton county, seeking the compelling of payment of its bonds by the treasurer from money in the bond fund.

Thereafter, the two mandamus actions were consolidated, and proceeded to trial and final disposition in the superior court, resulting in the awarding of relief to White, as prayed for, and denial of relief to Columbia Company, from which the treasurer and Columbia Company have appealed.

The trial court found "that there is now approximately $13,000 in said bond fund." This is as far as we are advised by the record before us as to the amount of money in question applicable to the payment of interest or principal of bonds of the district. This, manifestly, relates to the time of the trial, which evidently occurred prior to December 16, 1931, since the trial court rendered a memorandum opinion on that day directing the preparation of findings and decree. We do not find any recital in the record showing ex-

actly when the trial occurred, or as to how much money was in the bond fund of the district in the hands of the treasurer prior to the date of the trial, which, we assume, was the time as of which the court found that approximately $13,000 was in the bond fund.

These two bond issues having been consummated and dated May 1, 1918, and January 1, 1919, respectively, manifestly they were issued under the provisions of chapter 179, Laws of 1915, p. 605, and chapter 162, Laws of 1917, p. 723, amendatory thereto (Rem. Comp. Stat., § 7417 *et seq.*), both of these chapters being amendatory to our original irrigation district act of 1890. The statutory provisions with which we are here concerned are all found in chapter 179, Laws of 1915. While there have been a number of subsequent amendments to our irrigation act, including those of 1917, there have been no material changes in the provisions of chapter 179, Laws of 1915, p. 605, with which we are here concerned and which we think are controlling of the rights of the parties to these consolidated actions. Our references are to the sections of that chapter.

Section 7, p. 615, provides for successive issues of bonds of irrigation districts as their necessities may require, when authorized by a vote of their electors, and further provides as follows:

"Said bonds shall be payable in gold coin of the United States, in ten series, as follows, to-wit: At the expiration of eleven years, five per cent of the whole number of bonds; at the expiration of twelve years, six per cent; at the expiration of thirteen years, seven per cent; at the expiration of fourteen years, eight per cent; at the expiration of fifteen years, nine per cent; at the expiration of sixteen years, ten per cent; at the expiration [of] seventeen years, eleven per cent; at the expiration of eighteen years, thirteen per cent; at the expiration of nineteen years, fifteen per cent; at the expiration of twenty years, sixteen per cent, and shall

bear interest at the rate of six per cent per annum, payable semi-annually." [See Rem. 1927 Sup., § 7432.]

Section 9, p. 619, reads in part as follows:

"Said bonds and interest thereon and [here follows a provision relating to preferred claims which may be due the United States and with which we are not here concerned] shall be paid by revenue derived from an annual assessment upon the real property of the district, and all the real property in the district shall be and remain liable to be assessed for such payments as hereinafter provided." [See Rem. 1927 Sup., § 7434.]

Sections 10 and 11, p. 620, 621, provide certain procedure preliminary to the levying of the annual assessments.

Section 12, p. 621, reads in part as follows:

"The board of directors shall then levy an assessment sufficient to raise the ensuing annual interest on the outstanding bonds, . . . and at the expiration of ten years after the issuing of the bonds of any issue, the board must, from year to year, increase said assessment for the ensuing years in an amount sufficient to pay and discharge the outstanding bonds as they mature. . . . The assessments, when collected by the county treasurer, shall constitute a special fund, or funds as the case may be, to be called respectively, the 'Bond Fund of_____Irrigation District,' . . ." [See Rem. 1927 Sup., § 7440.]

Section 13, p. 622, reads in part as follows:

"The assessment upon real property shall be a lien against the property assessed, . . . And the lien for the bonds of any issue shall be a preferred lien to that of any subsequent issue." [See Rem. 1927 Sup., § 7441.]

The theory upon which the trial judge rested his decision is found, in substance, in his second conclusion of law, reading as follows:

"The bonds of a first issue not due, or not presented for payment, have no preference over the bonds of a

subsequent issue due and presented for payment. The order of payment of matured bonds and matured interest coupons is not determined by their maturities, but by the order of presenting them for payment."

We cannot agree that priority of presentation of either bonds or interest coupons will create any right of priority of payment. Each bond and each interest coupon matures on a specified date. We do not find anything in the law expressly or inferentially suggesting that any bond or interest coupon shall be otherwise payable than at the time specified as its maturity, or thereafter, without any preference arising by reason of order of presentation. We are of the opinion that no right of priority arises by reason of order of presentation.

When White, on January 2, 1930, presented, and demanded payment of, her series A bonds of the second issue, that being the date of their maturity, there were other bonds of that series then matured, aggregating thousands of dollars in excess of the amount of money then in the bond fund. So White was not then entitled to any prior right of payment from the bond fund over owners of other bonds of that series. This was, of itself, sufficient to warrant the treasurer refusing to pay White's bonds of that series. To have then paid White's bonds as demanded would have been an unwarranted preference as against the holders of thousands of- dollars of other bonds of that series then matured.

Some contention is made against the demand of the Columbia Company that the money in the bond fund, here in question, is largely the proceeds of assessments and levies made to pay interest upon the bonded indebtedness of the district; counsel invoking in that behalf the provisions of chapter 179, Laws of

1915, p. 621, § 12, above quoted. It may be that a portion of that money is the proceeds of such levies made for interest before the expiration of ten years after the issuing of the bonds. But, however that may be, such levies were all to be placed in the "bond fund," there being the one fund to be accumulated for the payment of interest and principal.

Of course, prior to the maturity of the first bonds of these issues, only interest would be a claim against that fund; but all money in that fund at the time of the maturity of any of the principal of the bonds, manifestly would be payable upon the principal as well as the interest, according to prior lien rights, as prescribed by section 13 of chapter 179, Laws of 1915, above quoted. While there is some suggestion in the briefs of counsel and in the record that the treasurer made some attempt to maintain an interest fund and a bond fund separately, manifestly he had no authority to do so; section 12 providing only for the treasurer's maintenance of a "bond fund." Besides, the trial court expressly found that the assessments "were collected by the treasurer and by him placed and kept in a single fund called a 'bond fund'."

We think it is the law that the interest, evidenced in the body of each bond and by coupons attached, became a part of the bond. Manifestly, at all events, this interest and principal should be so treated, in view of the fact that but one fund is provided for the payment of principal and interest. *The City v. Lamson,* 9 Wall. (U. S.) 477.

In view of the condition of the bond fund when series B bonds of the first issue matured, we are of the opinion that priority of payment is in favor of those bonds owned by Columbia Company, series A bonds of that issue having been paid; because, when

they matured, there was in the bond fund sufficient money to pay them, which was not theretofore any part of a sufficient amount to pay the whole of series A of the second issue. This seems to us to be the only practical method of preserving the preference given by the express provision of § 13, chapter 179, Laws of 1915, p. 622.

We conclude that the trial court erred in awarding payment of White's bonds of series A of the second issue, as prayed for by her. We further conclude that the trial court erred in refusing to award payment of the Columbia Company's bonds, series B of the first issue, there being sufficient money in the bond fund for that purpose and they being all of the next payable series of the first issue. We cannot say, upon the record before us, that the trial court should have awarded the Columbia Company further relief at this time, because it is not rendered plain that there was, at the time of trial, in the bond fund sufficient money to pay all of series C bonds of the first issue, though that may be so at this time.

The judgment is reversed. The cause is remanded to the superior court, with directions to render a new judgment denying to relator White the relief prayed for by her; and awarding to relator Columbia Company direction of payment of its series B bonds of the first issue from money in the bond fund. Columbia Company shall not be awarded further relief in this action; but this disposition of this cause shall be without prejudice to Columbia Company's right which it may have with reference to preference payment of its series C bonds of the first issue from money in, or coming into, the bond fund, whenever such money shall be sufficient in amount to pay all of series C bonds of the first issue.

This disposition of the consolidated causes in this court leads us to conclude that no costs should be awarded in favor of, or against, any of the parties to these appeals.

TOLMAN, C. J., MITCHELL, MILLARD, and BEALS, JJ., concur.