770

772

Harry W. Horton and George R. Kirk, both of El Centro, Cal., for Imperial Irr. Dist.

Orrick, Dahlquist, Neff & Herrington, of San Francisco, Cal., for bondholders' committee.

Call, Murphey & Davis, of Los Angeles, Cal., for certain nondepositing bondholders.

Clark, Nichols & Eltse, of Berkeley, Cal., for Mary E. Morris, bondholder.

W. Coburn Cook, of Turlock, Cal., for Hillcrest Trading Corporation, bondholder.

JENNEY, District Judge.

### Findings Under the New Rules.

In its order of December 26, 1940, calling for briefs and arguments on the submitted findings of fact, conclusions of law, form of interlocutory decree, and objections and amendments thereto, the court stated: "Counsel should bear in mind that the court has expressed itself in favor of approving the proposed Plan of Composition. Therefore, objections should be directed to form rather than to legal theory."

Counsel for proponents feel that objections and amendments have been submitted which disregard this admonition of the court. They contend that some of these constitute an effort to induce the court to sign findings, conclusions and decree in favor of the dissenting bondholders, and that others ask for a recitation or summation of the evidence, without regard to how the court may have resolved that evidence—for the apparent purpose of affording to dissenters findings on all matters, which may fully present every possible view of the case.

Counsel for objectors have now withdrawn certain objections but claim that some, at least, of the proposed findings are not supported by the evidence. They also contend that many of their objections and amendments should be classified as requests for special findings on specific facts, in order that they may make appropriate legal contentions without the necessity and expense of taking up the entire record. The court feels that both proposals and objections have been presented in the best of faith, and wishes to thank and compliment all counsel appearing herein for the courteous and thorough manner in which every question of law and fact has been presented.

Let us make certain general observations and then analyze the pleadings in order to determine the issues which seem to us to be involved.

Under Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, applicable to the United States District Courts, it is, generally speaking, unnecessary for the unsuccessful party to propose amendments to findings or conclusions or counter findings. Porto Rican American Tobacco Co. v. City Bank Farmers Trust Co., D.C., 1 F.R.D. 20; Arnstein v. American Soc. of Composers, Authors and Publishers, D. C., 29 F.Supp. 388.

The unsuccessful party should make his objections to the court's findings by appropriate assignments of error on any appeal which he may take. Penmac Corp. v. Esterbrook Steel Pen Mfg. Co., D.C., 27 F. Supp. 86, reversed on other grounds, 2 Cir., 108 F.2d 695.

Rule 52(a) requires only that " * * * the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment * * *." The court need not find on every issue requested, but a finding of such essential facts as lay a basis for the decision is sufficient. 3 Moore's Federal Practice, p. 3119; Penmac Corp. v. Esterbrook Steel Pen Mfg. Co., supra; McGee v. Nee, 8 Cir., 113 F.2d 543; Sonken-Galamba Corp. v. Atchison, T. & S. F. Ry. Co., D.C., 34 F.Supp. 15; Tulsa City Lines v. Mains, 10 Cir., 107 F.2d 377.

It is fundamental that counsel should submit findings on essential facts only, i. e., of the essential aspects of the facts only, and should not submit findings upon matters which are superfluous or immaterial. Clearly the rule does not require the court to make elaborate findings upon facts which are inappropriate to the decree entered, nor upon all such facts as will fully present every possible view of the case.

A critical examination of the pleadings herein discloses certain essential issues; all of which, proponents claim, have been covered in the findings. In many of the issues, of course, both questions of fact and questions of law are involved. Proponents contend that, with one exception, all of the legal issues—i. e., issues which do not in-

volve essentially questions of fact—such as the constitutionality of the Bankruptcy Act, as amended, 11 U.S.C.A. § 1 et seq., the right of the district to avail itself thereof, the priority of bonds, the validity of the 75% modification clause, res judicata, etc., have been decided adversely to the contentions of the dissenting bondholders by the Circuit Court of Appeals for this Ninth Circuit, by the United States Supreme Court, or by the Supreme Court or other authoritative courts of the State of California. These counsel rely largely upon a series of cases recently decided by the Circuit Court of Appeals for this Ninth Circuit and an earlier decision by the same court, viz: (1) West Coast Life Ins. Co. v. Merced Irr. Dist., 114 F.2d 654, certiorari denied, Pacific Nat. Bank of San Francisco v. Merced Irr. Dist., January 6, 1941, 61 S.Ct. 441, 85 L.Ed. ——; (2) Bekins v. Lindsay Strathmore Irr. Dist., 114 F.2d 680, certiorari denied February 17, 1941, 61 S.Ct. 712, 85 L.Ed. ——; (3) Moody. v. James Irr. Dist., 114 F.2d 685, certiorari denied February 17, 1941, 61 S.Ct. 712, 85 L.Ed. ——; (4) Newhouse v. Corcoran Irr. Dist., 114 F.2d 690, certiorari denied January 6, 1941, 61 S.Ct. 440, 85 L.Ed. ——; (5) Jordan v. Palo Verde Irr. Dist., 114 F.2d 691, certiorari denied February 17, 1941, 61 S.Ct. 712, 85 L.Ed. ——; (6) Getz v. Nevada Irr. Dist., 112 F.2d 495.

■ A detailed discussion of these decisions, (1) to (6) above, would serve no good purpose. Suffice it to say that, in so far as the same are applicable here, we are bound thereby and are completely in accord therewith.

### The Issues Involved.

We shall tabulate the essential issues here involved and indicate, as presented by counsel for proponents, (1) the general nature of the issue, (2) the place in which the matter is covered in the findings, and (3) the decision or decisions applicable thereto. (For convenience, the cases cited above will be identified by the numbers placed before each citation, without repeating the name of the case.)

| | Issue | Finding | Decision |
|---|---|---|---|
| I. | District's good faith in filing Plan | LXX and LXXVI (see also LVII) | (1), (2) and (6) |
| II. | Insolvency and ability to pay debts | LXXXVIII | (1) and (4) |
| III. | Sufficiency of acceptance of Plan by creditors | LXXIV, LXXVI and LXXVII (see also LIX and LXI) | |
| IV. | Whether Plan is fair and equitable | LXXIV and LXXXIV | (1), (2), (3) and (4) |
| V. | Whether District is authorized to proceed in bankruptcy | LXXXIV (see also LXXI, LXXII and LXXXI—see Conclusions of Law VII) | (1) |
| VI. | Consent of State of California to bankruptcy proceedings | XCIII | (1) |
| VII. | Unconstitutionality of Bankruptcy Act | LXXXIX | (1) and United States v. Bekins, 304 U. S. 27, 58 S.Ct. 811, 82 L. Ed. 1137 |
| VIII.(a) | Priority of Bonds —on theory that District's funds are trust funds | XCII (see also LXXXVIII and LXIX) | (1) and (4) |

| Issue | Finding | Decision |
|---|---|---|
| VIII.(b) Priority of Bonds —on theory that judgment creditors have priority | LXXXV (see also LXIX and LXXXVIII) | (5) and Vallette v. City of Vero Beach, 5 Cir., May 22, 1939, 104 F.2d 59, 124 A.L. R. 686 |
| VIII.(c) Priority of Bonds —on theory that non-deposited bonds have priority over refunding bonds. | LXIX (see also LXXXVI and LXXXVIII) | (1) |
| VIII.(d) Priority of Bonds —on theory that presentation created priority | LXXXVIII (see also LXIX) | (1) |
| VIII.(e) Priority of Bonds —on theory that issues prior to the 1917 amendment have priority over later issues | LXXXVIII (see also LXIX) | |
| IX. Res judicata | XCV | (1) |
| X. Special attack on fairness and alleged discrimination: | | |
| (a) Modification (75%) Clause; | | (6) and Livingston v. Robinson, 10 Cal.2d 730, 76 P.2d 1192 |
| (b) Limitation on maximum assessments; | | (1), (3) and (4) |
| (c) Mortgage debts not included in Composition | LXXIV and LXXXIV | (1) |
| XI. Committee's good faith and full disclosure | LXII, LXXV, XC and XCIV | American United Mutual Life Ins. Co. v. City of Avon Park, 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. —— |
| XII. Original Plan of 1932—whether fully consummated | LIV (see also XVII, XVIII, XXIII and XXIV) | (1) |

The issues raised in the answers and affirmative defenses are covered in Finding XCVI and, except as hereinafter indicated, by decisions heretofore cited. Two of these issues require special consideration, namely VIII and X(a), supra.

### Issue VIII, supra,—General Priority

 As to VIII: Objectors request special findings of fact on the issue of whether or no they are entitled to preference and priority of payment on certain matured bonds and coupons which were presented for payment and registration, so that they may take this question to a higher court upon the findings alone. Ordinarily, the court considers most favorably any request by a defeated litigant for special findings as a method of saving proper legal questions, without the necessity of taking up the entire record on a bill of exceptions, etc. Under such circumstances, however, the court scrutinizes carefully the proposed special findings and rejects the same in the event there is any misleading, erroneous or inaccurate statement of

fact. The court also tries to avoid special findings whenever there appears to be an attempt to save legal questions which have already been authoritatively decided. See Clough v. Baber, 38 Cal.App.2d 50, 100 P.2d 519 (see Erie R. Co. v. Tompkins and cases cited immediately following, infra); West Coast Life Ins. Co. v. Merced Irr. Dist., and companion cases cited, supra.

In its rulings on special findings in the case at bar the court will have in mind, also, that the matter of "presentation for payment" of bonds and coupons may present definite questions of both law and fact —particularly since such presentation was the subject of an injunctive order, dated September 16, 1935, by one of our colleagues,of this court (In the Matter of Imperial Irrigation District, Debtor, No. 24,-664-M, Central Division) and also of other litigation in the California courts. (Jordan v. Imp. Irr. Dist., Sup.Ct., Imperial Co., No. 17725, and consolidated cases). Manifestly, a finding that a particular bondholder had presented a matured bond or coupon for payment would avail little unless, as to each and all matured bonds and coupons, the court could designate, one by one, the order in which they were presented. Such a designation is impossible upon the record before us.

It must be borne in mind also that we are not here concerned with a situation in which there is on hand only sufficient moneys to pay a part of the coupons matured to date. The evidence shows that the district has available sufficient moneys to pay all matured coupons at the reduced rate provided in the Plan of Composition and the date of payment of the principal of all bonds is uniformly extended.

### Issue X(a), supra,—Amendment

As to X(a): The Plan of Composition now before the court provides for modification when agreed upon by the petitioning district and the holders of at least seventy-five per centum in amount of the bonds or warrants to be affected by such modification. To this provision there is objection by the dissenters, particularly upon the ground that it is unfair and might be the subject of abuse.

Counsel for proponents cite, in support of this amendment provision, Getz v. Nevada Irrigation Dist., supra, and Livingston v. Robinson, supra. As pointed out by counsel for dissenters and by this court at the original hearing in San Diego, these two cases may be distinguished from the case at bar. In both of those cases it was provided in the bonds and trust indenture securing the same, as originally written, that the bonds might be modified with the consent of the holders of a stated percentage of the outstanding bonds. Thus each holder of such a bond impliedly consented, by the acceptance thereof, to a future modification under the stipulated conditions.

This modification clause of the proposed plan has given the court some concern. Section 83 sub. a of the Bankruptcy Act, as amended, 11 U.S.C.A. § 403, sub. a, defines a "plan of composition" as follows: "The 'plan of composition', within the meaning of this chapter, may include provisions modifying or altering the rights of creditors generally, or of any class' of them, secured or unsecured, either through issuance of new securities of any character, or otherwise, and may contain such other provisions and agreements not inconsistent with this chapter as the parties may desire."

However, no express provision of the act forbids such a modification clause or requires that the plan be in any particular form. As suggested in Moore's Bankruptcy Manual (1939), Paragraph 81.12, page 438, each district reorganization must be considered, more or less, as a special problem: "The 'plan of composition' under the provisions of section 83a may include provisions modifying or altering the rights of creditors generally, or of any class of them, secured or unsecured, either through issuance of new securities of any character, or otherwise. It may also contain such other provisions and agreements not inconsistent with Chapter IX as the parties may desire. A more explicit statement of the contents of a plan of composition is hardly possible in view of the differences in the structure, powers and finances of the various public debtors subject to the Act. Specific plans must be worked out to suit the circumstances of the district seeking relief."

In this respect Chapter IX, 11 U.S.C.A. § 401 et seq., relating to public agencies, differs from Chapter X, 11 U.S.C.A. § 501 et seq. (corporate reorganizations) and Chapter XI, 11 U.S.C.A. § 701 et seq. (corporate arrangements), both of which contain detailed provisions as to what the plans may or may not contain. See Finletter, "The Law of Bankruptcy Reorganization" (1939) pages 405–407, footnote. Chapter IX expired by its terms June 30, 1940, and this expiration date was only extended by

the Congress to June 30, 1942, Chapter 438, Acts of the 76th Congress, Third Session, 11 U.S.C.A. § 404. By the very nature of the legislation there is no assurance that it will be continued in effect. It may well be that the Congress has other plans which will be of even greater assistance to irrigation districts and the holders of their securities. Due to the remarkable success of the Securities and Exchange Commission as a regulatory body and as an advisor to the court and intervener in proceedings under Section 77B, 11 U.S.C.A. § 207, and the new Chapter X of the Bankruptcy Act, as amended, the Congress may be intending to deal similarly with Chapter IX proceedings. In that event all interested parties will have the benefit of both state and federal advisory and regulatory bodies.

This court is not required to hold (and would not hold) that, as a matter of law, parties would be free to include in any plan of composition a provision for its subsequent modification. While Congress gave broad latitude to districts and security holders to formulate a plan to meet their particular requirements, the District Court must find that such plan is fair and reasonable as a matter of law. American United Mutual Life Ins. Co. v. City of Avon Park, supra. See, also, Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110, 119.

Such a provision for subsequent modification is usual under trust indentures providing for the original issuance of securities of private corporations and is not uncommon in like refunding issues pursuant to a plan of reorganization. In re Georgian Hotel Corporation, 7 Cir., 82 F.2d 917.

At page 919 of 82 F.2d the Circuit Court of Appeals for the Seventh Circuit stated, in that case:

"Appellants assert gross unfairness in that part of the plan which permits such changes in the terms of the new bonds to be subsequently made as may be authorized by 75 per cent. of the holders of those bonds. The evident intent of this was to provide power and flexibility for meeting unforeseen contingencies as they might arise, and to provide, so far as may be, against resort to another reorganization proceeding in case this one cannot without alteration be ultimately carried out.

"Unquestionably this or any other granted power may be abused. Fraudulent and oppressive invasion of minority rights and equities which appellants' brief points out might be attempted by the majority. But prevention of such inequities is a subject-matter of the jurisdiction of equity, whose long and strong arm may readily and presumably effectively be invoked against it."

In arriving at its final decision to approve the plan of composition containing this provision for modification, the court has taken into consideration a number of factors, which indicate to it that the plan, containing the amendatory clause, is a more workable and feasible plan than it would be, were this clause omitted entirely. Considering the uncertainties of the future, the Imperial Irrigation District is undertaking a heavy burden in its effort to meet such a high percentage of its outstanding general bond and registered warrant obligations. Once before the district attempted a reorganization—one fraught with long litigation and great expense. This was just prior to the passage of the act under which these proceedings were instituted. To subject it to another expensive proceeding, such as this, simply because a small group of bondholders refuses to assent to a proposed plan, might easily wreck the whole structure and cause unconscionable losses not only to the bondholders but to the ranchers within the district. Under existing conditions, we believe that, as a practical matter, sufficient safeguards are provided to the minority by the proposed plan and the existing laws. Just what, specifically, are these safeguards?

The plan before us provides that the board of directors of the district and the holders of seventy-five per centum in amount of the bonds to be affected by any amendment must both agree thereto. The plan further provides (Lines 23–25, Page 37, Section 11, of Exhibit "D" to the petition herein) that: "Such amendment, modification or alteration shall be subject to the approval of the California Districts Securities Commission, or its successor in office at the time. * * *"

Likewise, such a modification must be submitted to the landowners in a special election called for that purpose. "The District, by resolution of its Board of Directors, may propose any such amendment, modification or alteration and shall submit the same to the electors of the District at a special election to be called and held for that purpose." (Lines 14–17, Page 37, Section 11, Exhibit "D" to the petition herein.)

Before any election having to do with funding or refunding bonds or the modification of a refunding plan may be called, the

California Irrigation District Act requires that the proposal be submitted to and approved by the California Districts Securities Commission. Sections 32a, b, c, d and e, and sections 32f and 32½, as added by St.1939, pp. 19, 1752, Act 3854, Deering's General Laws 1937.

We must also not overlook the general equity jurisdiction of all courts to scrutinize, upon proper petition therefor, any such proposed amendment and to prevent fraud or unfairness. In re Georgian Hotel Corporation, supra.

As the court has heretofore stated, this arrangement for modification is not completely satisfactory. We believe, however, that this court should approve the plan as written and leave the higher courts to disapprove such an amendatory clause, if such courts deem it necessary in the general public interest. To date they have not done so.

### Priority of Bonds Issued Before 1917 Amendment.

Of all the issues raised in this proceeding only one point has apparently not been the subject of special consideration by the courts in the cases hereinbefore cited. That point is this: some of the dissenters insist that, without reference to VIII (a) to (d), both inclusive, supra, the bonds issued prior to the 1917 amendment have a special "priority" and are entitled to preferred and preferential treatment, for which no provision is made in the Plan of Composition before us.

Section 83, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 403, sub. b is as follows: "* * * the judge shall classify the creditors according to the nature of their respective claims and interests: Provided, however, That the holders of all claims, regardless of the manner in which they are evidenced, which are payable without preference out of funds derived from the same source or sources shall be of one class. The holders of claims for the payment of which specific property or revenues are pledged, or which are otherwise given preference as provided by law, shall accordingly constitute a separate class or classes of creditors."

Our Circuit Court, speaking through Judge Stephens in West Coast Life Ins. Co. v. Merced Irr. Dist., supra, has held, in effect that the Bankruptcy Act, in so far as it is applicable to taxing districts, is a special kind of legislation which has prescribed its own test of preference and priority, and that all claims payable from the same source are to be considered as one class. The court there said [114 F.2d 673], "We agree with the statement contained in the brief of Amici Curiae, 'It is obvious that if bankruptcy Courts are to recognize every conceivable claimed "priority" or "preference", the entire purpose of Chapter IX would fail.'" See, also, In re Drainage Dist. No. 7, D.C., 25 F.Supp. 372, and the decision of our colleague, Judge McCormick, in Re James Irr. Dist., D.C., 25 F.Supp. 974.

This same point was also considered and disposed of by Judge McCormick in a former decision in Re Imperial Irrigation District, D.C., 10 F.Supp. 832, wherein the court pointed out that the California Irrigation District Act, as finally adopted, contemplated by its very terms numerous issues of bonds, and that no provision was made therein to effectively give priority to any particular issue, as the bonds themselves do not constitute a lien upon the lands in the district—the only lien being that of the tax or assessment. Boskowitz v. Thompson, 144 Cal. 724, 78 P. 290. It is contended by some of the dissenters that our colleague fell into error because the point here raised was not properly presented before him; and that if he "had noted the care with which the legislature had endeavored to give bond issues preference in the order of their issuance he would never have taken the position which he did take." We do not find ourselves in accord with that statement. However, in spite of our views as hereinafter expressed, let us further consider this confusing and perplexing problem.

If such priority, as contended for herein, in fact exists, the basis thereof must be found in the California statutes and decisions. This point is, of course, primarily a problem of construction of the California Irrigation District Act, and that construction which the California courts have given to the statute is binding upon this court. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Six Companies of California v. Joint Highway District No. 13, 311 U.S. 180, 61 S. Ct. 186, 85 L.Ed. ——; West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. ——; Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. ——.

It is fundamental that in construing a statute, particular clauses and phrases should not be studied as detached and isolated expressions, but the whole and every

part of the statute must be considered in fixing the meaning of any of its parts. Black on Interpretation of Laws, 2d Ed., p. 317. See, Rector, etc., of Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226.

The alleged claim of priority is based largely upon the words which appeared in Section 40 of the California Irrigation District Act as originally enacted (Stats. 1897, page 267) prior to the 1917 amendment, where it was provided: "The assessment upon real property is a lien against the property assessed from and after the first Monday in March for any year, and the lien for the bonds of any issue shall be a preferred lien to that for any subsequent issue, and such lien is not removed until the assessments are paid, or the property sold for the payment thereof." See, also, Section 23, Stats.1891, pp. 149, 150.

This section was amended in 1917 (Stats. 1917, p. 768) to read, in its entirety: "The assessment upon land is a lien against the property assessed from and after the first Monday in March for any year."

It should be noted that the present irrigation district act was adopted in 1897, which act was itself a revision of the "Wright Act" adopted in 1887, St.1887, p. 29. Under the Wright Act, as originally passed, there was no provision for more than one issue of bonds and the situation was not attempted to be corrected by the Legislature until 1891. Stats.1891, pp. 149, 150.

Section 22 of the Act of 1887 provided for the levy of an assessment to raise the annual interest requirement on outstanding bonds, etc., and appears to be the predecessor of Section 39 of the 1897 act. Section 23 of the Act of 1887 merely provided that the assessment was a lien against the property assessed after a certain date. As originally enacted, that section contained no clause giving priority to earlier issues of bonds. It corresponds to the present Section 40 of the Act. In 1891, Section 23 was amended to read as did finally Section 40 of the 1897 act, and Section 22 was also amended, but not in such a way as to create the machinery for enforcing any priority which might have been created by the amendment of Section 23.

In Selby v. Oakdale Irrigation District, 140 Cal.App. 171, 35 P.2d 125, the California court held that no priority existed between successive issues of irrigation district bonds. In that case the bonds of claimant were issued in 1910, and this seems to be the only California case which considers the effect of Section 40 of the Act as it read prior to the 1917 amendment. The court impliedly questioned any priority created by Section 40. The first and primary question before the court was whether the holders of any particular issue of bonds—in that case the holders of refunding bonds—had any special priority or claim to the assessment purportedly levied for their exclusive benefit. It held that no such priority or preference existed and that the holders of all the outstanding bonds of the district were entitled to share in the assessment. Having decided this question, it then became material, theoretically, to determine the order in which coupons were presented for payment. This apparently was never attempted. The court held that all bonds were on the basis of equality; that the district could not levy an assessment in part for any single issue; and that the annual assessments were required to be levied on a unit basis for the benefit of all of the issued and outstanding securities, without preference or priority of any one issue over the others, saying at page 180 of 140 Cal. App., at page 129 of 35 P.2d: "Section 39, supra, specifies that the board of directors shall levy a tax covering *all* the interest coupons falling due, not a part or parcel thereof, within the discretion of the taxing board. The statute means just exactly what it says—'all,' and not a part."

The court further states, 140 Cal.App. pages 177, 178, 35 P.2d at page 128: "We have read all the acts of the Legislature beginning with the act of 1897, down to and including the acts of the Legislature of 1933, and fail to find a single clause, sentence, or word giving to, or indicating that the board of directors of an irrigation district is invested with any power or authority to discriminate between bondholders in levying taxes for the payment either of principal or interest; nor has our attention been called to any such provision in the various statutes. * * *" See, also, Thomas v. Patterson, 61 Colo. 547, 159 P. 34, for a like decision under an identical statute.

However, in this Selby case it is said at page 182 of 140 Cal.App., at page 130 of 35 P.2d: "* * * a large percentage of the refunding bonds now held by the interveners and others are simply converted bonds of issues preceding the amendment of the section in 1917, and if justice required, a court of equity would be, we think, justified in holding that the prior lien, if any,

given to the issues preceding the amendment, was carried over, entered into, and became a substantive part of the refunding bonds, just as the lien created by an original mortgage is carried over and becomes an integral part of the instrument renewing the security given to insure payment of the original obligation."

In Bates v. McHenry, 123 Cal.App. 81, at page 86, 10 P.2d 1038, at page 1040, the court says: "The word 'any,' used in section 52 of the California Irrigation District Laws, is sufficiently broad to comprehend the bonds or interest coupons of any issue so that there is no priority given under the statute to any of the bonds issued by the irrigation district." See, also, Meyerfeld v. South San Joaquin Irr. Dist., 3 Cal.2d 409, 45 P.2d 321.

■ That the bonds of a California irrigation district do not constitute a lien upon any property in the district is decided in Boskowitz v. Thompson, supra, and Clough v. Compton-Delevan Irr. Dist., 1938, 12 Cal.2d 385, 85 P.2d 126, 128. In the latter case the court said: "Nowhere does it [the statute] declare that the bondholder has a lien on the land itself, and it certainly does not recognize any trust for his sole benefit."

We are at a loss to understand how this statutory language can be considered by the federal courts to give any effective lien to the bonds in the face of the decisions of the California courts. How could the holder of such a bond enforce any such "lien"? This question is considered in the following cases which refused enforcement: El Camino Irr. Dist. v. El Camino Land Corp., 1938, 12 Cal.2d 378, 85 P.2d 123; Moody v. Provident Irr. Dist., 1938, 12 Cal.2d 389, 85 P.2d 128; Atchison, T. & S. F. Ry. Co. v. Reclamation Dist., 173 Cal. 91, 159 P. 430; Marra v. San Jacinto & Pleasant Valley Irr. Dist., C.C., 131 F. 780; Clough v. Compton-Delevan Irr. Dist., supra.

■ The sole remedy of bondholders against the land is to compel, by writ of mandate, the levy of an assessment upon all the lands in the district. Provident Land Corp. v. Zumwalt, 1938, 12 Cal.2d 365, 85 P.2d 116; Mulcahy v. Baldwin, 216 Cal. 517, 15 P.2d 738.

■ In enforcing this sole remedy, no priority can be given to bonds of any issue for the reason that only one annual assessment is authorized under Section 39 of the Act (Section 22 of the prior act) and this one assessment must be levied to provide for payment of all issued and outstanding bonds, regardless of the date of issuance. Selby v. Oakdale Irr. Dist., supra.

To support the claim of priority of bonds issued prior to the amendment of 1917, counsel urges this court to interpret the California act in the same manner as the Washington law was interpreted in State v. Forsyth, 170 Wash. 71, 15 P.2d 268. In that case the court held that payment of matured bonds should be made in the order of their date of issuance, and established the Washington rule that the right to payment is not dependent upon the time of presentation for payment.

That the Washington rule is peculiar to that state appears from Thomas v. Patterson, 61 Colo. 547, 159 P. 34, 35, supra, wherein the Colorado court held that a similar section of the Colorado act could not be construed ex proprio vigore to afford a priority dependent upon the date of the original issuance of bonds, but that in order to accomplish such a result, it would be necessary to have separate levies with which to pay each issue of bonds, saying: "otherwise, the language is not susceptible of enforcement by any practical method that has been pointed out or that we can think of."

The Colorado statute, like the Wright Act of California, from which it was taken, provides that " * * * the lien for taxes, for the payment of the interest and principal of any bond issue, shall be a prior lien to that of any subsequent bond issue." Colo.Laws, 1905, § 15, page 258. In considering that section the court called particular attention to the fact that the proviso reads "the lien for taxes," not "the lien on taxes," and emphasized the point that when taxes are paid upon any land, the lien proviso becomes immaterial, for, when the taxes are paid, the lien automatically disappears and the proceeds of such payment must be apportioned to the funds for which such taxes were levied.

As we have said, the problem is one of statutory construction and the entire act must be considered in attempting to interpret the same. The Supreme Court of Idaho has aptly said that when language, which appears to be mandatory and which provides for priority of payment of certain bonds, is contradicted by language which provides for equality of payment of all bonds, the most that can be done is to re-

gard the provision for priority as directory only. Meyers v. City of Idaho Falls, 52 Idaho 81, 11 P.2d 626.

This court is unwilling to be controlled by the Washington case in the light of the California and other decisions hereinbefore cited.

■ We must bear in mind that the California Irrigation District Act has specifically authorized, since 1891, more than one issue of bonds and so it must have been contemplated that subsequent bonds were to be issued and sold. If subsequent issues were to be made subordinate to prior issues, their salability would be largely destroyed and, as a practical matter, the object of the statute would be defeated. We should note also that the statute contemplates a permanent improvement district with power to issue such bonds, from time to time, as may be necessary for the requirements of the district. Sections 30–31 of the California Irrigation District Act. See, also, Sections 4, 5 and 9 of the California Districts Securities Commission Act, Stats.1931, p. 2263. Such is, in fact, the well-recognized practice of which the court may take judicial notice. Bulletin No. 37, Publications of the Division of Water Resources, Department of Public Works, State of California.

■ May the language of Section 40 of the California Irrigation District Act, as originally written (and prior to the amendment of 1917), be given the effect contended for by these dissenting bondholders without doing violence to the fundamental nature of irrigation district bonds? Such bonds are not mortgages upon the land; nor do the bonds of any subsequent issue constitute junior liens, subject to foreclosure in the event of default in the payment of any earlier issue. On the contrary, bonds of a California irrigation district are general obligations and each bond is payable from unlimited ad valorem assessments upon all of the lands in the district. Section 33 of the California Irrigation District Act so provided: "Said bonds and the interest thereon shall be paid from revenue derived from an annual assessment upon the land within the district; and all the land within the district shall be and remain liable to be assessed for such payments as hereinafter provided," St.1917, p. 764, and the courts have so held in connection with the Act of 1887. Farwell v. San Jacinto & Pleasant Valley Irrigation District, 49 Cal.App. 167, 192 P. 1034; Rialto Irrigation District v. Stowell, 9 Cir., 246 F. 294; and in connec-

tion with the improvement district and reclamation district acts, Rohwer v. Gibson, 126 Cal.App. 707, 14 P.2d 1051. See, also, American Securities Co. v. Forward, 220 Cal. 566, 32 P.2d 343, 96 A.L.R. 1268, affirmed sub. tit. Irones v. American Securities Co., 294 U.S. 692, 55 S.Ct. 403, 79 L. Ed. 1232.

The basic position of these dissenters may be summarized thus: a part of one sentence in a long and complex statute reads: "the lien for the bonds of any issue shall be a preferred lien to that for any subsequent issue." On that phrase they found practically their entire contention that their particular bonds are entitled to preferential treatment in this proceeding. However, as we have said, all provisions of the statute must be read together so that the object and purpose of the Legislature may be ascertained therefrom. Citations, supra. A careful study of the California statute as a whole, reveals that no procedure was provided to enforce any special preference; and in dealing with municipal bodies, the mode is often the measure of the power— procedure more important that a particular phrase.

With the law of California in the state in which we find it, it surely cannot be properly said that the holders of bonds issued before the effective date of the 1917 amendment to Section 40 of the Irrigation District Act constitute a separate class within the meaning of 11 U.S.C.A. § 403, sub. b, supra. However, because of the careful manner in which the foregoing point has been presented to the court, we have felt it advisable to discuss briefly the entire problem. We wish again to call attention to the fact that here we are dealing with a somewhat unique situation. There is no deficiency of moneys on hand to pay all matured coupons, at the reduced rate provided for in the Plan of Composition. What the plan itself proposes is a uniform reduction in the interest rate on all bonds and an extension of the due date of the principal sum of all bonds, in order to perfect a reorganization or composition as contemplated by the Bankruptcy Act, as amended. There is no attempt to pay one issue and extend another issue or other issues. All maturities under the refunding plan are to be paid to the date of the court's decree and all issues are, in principle, being treated alike. May it be said that under the provisions of the Bankruptcy Act, as amended, the court has no power to approve a plan of composition which uni-

formly extends the time for payment of all issues of bonds? How may it be said that, under the circumstances, the court has no power to extend the time for payment of one issue, but that it has that power as to another issue or other issues, without assuming to create a preference in violation of the California law?

In making our rulings on the applicable findings, we have tried to be guided by the broad general principles enunciated by the California courts and by the Circuit Court of Appeals for this circuit, in the cases hereinbefore discussed.

### Priority of First and Second Issues.

Some of the dissenters also claim that bonds of the first and second issues of the district, which were issued subsequent to 1909 and prior to the 1917 amendment, are entitled to special preferential treatment in the Plan of Composition upon the theory that they were, or should have been, payable not only from assessments upon the lands in the district, but also upon the improvements thereon. The theory of these dissenters is that Section 35 of the California Irrigation District Act as amended in 1909 (Stats.1909, p. 461) is unconstitutional, because of the proviso clause attached thereto which stated that the provisions of the section relating to the exemption of improvements upon land or town lots should not apply to any district then organized unless such provision should be approved by a vote of the resident holders of title to lands within the district.

It is contended that by reason of the alleged invalidity of this proviso clause, these bonds are entitled to preference. Even though it be conceded that the proviso clause is void for a lack of uniformity, this clause is separable and Section 35 would remain in effect as amended, reading: "Improvements on any lands or town lots within such district, shall be exempt from taxation for any of the purposes mentioned in this act."

Thus all bonds would be payable from assessments levied upon the lands in the district and none of the bonds would be separately secured by assessments upon improvements.

We think, however, that the proviso clause is valid as a proper classification of irrigation districts organized before the adoption of the amendment and those organized subsequently (Mordecai v. Board of Supervisors, 183 Cal. 434, 192 P. 40) and the courts will not interfere with such a classification, unless it is manifestly arbitrary or unreasonable. Rainey v. Michel, 1936, 6 Cal.2d 259, 57 P.2d 932, 105 A.L.R. 148; People v. Monterey Fish Products Co., 1925, 195 Cal. 548, 234 P. 398, 38 A.L.R. 1186. See, also, Wores v. Imperial Irrigation Dist., 1924, 193 Cal. 609, 227 P. 181.

The Imperial Irrigation District did not come into existence, it will be remembered, until 1911, and since that date there has been no provision in the California law authorizing the assessor to make an assessment on improvements on lands or town lots; and, so far as we have been able to learn, no irrigation district in the state has attempted, during that period, to levy assessments upon improvements. The practical constructions of statutes by public officers required to operate thereunder is persuasive. Riley v. Forbes, 193 Cal. 740, 227 P. 768; United States v. Philbrick, 120 U.S. 52, 7 S.Ct. 413, 30 L.Ed. 559; McLaren v. Fleischer, 256 U.S. 477, 41 S.Ct. 577, 65 L.Ed. 1052.

### Ruling on Objections to Findings.

In the light of the foregoing, let us refer now to the objections presented by Messrs. Call, Murphey and Davis, attorneys for certain dissenters. The following are the court's rulings on objections to findings of fact, conclusions of law and form of decree. Unless otherwise indicated, these documents are approved as finally presented.

Objection No. 1 is overruled.

Objection No. 2 is sustained in part. There shall be added at the end of Finding No. III after the words, "within the boundaries of said District," the following: "which greatly enhanced the value of the lands within the District and without which the lands within the District would be almost valueless. Said District properties were acquired with the proceeds of the First, Second, Third and Fourth bond issues of the District hereinafter referred to. In addition thereto said District has acquired and constructed and is still adding thereto a number of power plants for the generation of electrical energy and electrical transmission and distribution lines which extend over a large portion of the District. This electrical generation and distribution work has been accomplished with the proceeds of revenue bonds payable from power revenues only or from loan agreements in connection therewith and not from general funds."

Objection No. 3 is overruled.

Objection No. 4 is overruled.

Objection No. 5 is overruled.

Objection No. 6 has been withdrawn.

Objection No. 7 has been withdrawn.

Objection No. 8 is overruled.

Objection No. 9 is sustained in part. There shall be added to Finding LI the following: "It is hoped that the profits of the District from its power system will meet all payments required from the District on said All American Canal Contract, although there is no assurance thereof."

Objection No. 10 is sustained.

Objection No. 11 is sustained.

Objection No. 12 is sustained in part. There shall be added to the end of Finding LII the following: "During said period the District offered to pay to the owners and holders of non-deposited bonds and non-deposited warrants the same amount of interest paid to the holders of Refunding Bonds and deposited warrants, but only upon the condition that such non-deposited bonds and non-deposited warrants be deposited in accordance with the Plan of 1932 and the Warrant Retirement Plan."

Objection No. 13 is sustained.

Objection No. 14 is sustained.

Objection No. 15 is sustained.

Objection No. 16 is overruled.

Objection No. 17 is sustained.

Objection No. 18 is overruled.

Objection No. 19 is overruled.

Objection No. 20 has been withdrawn.

Objection No. 21 is sustained in part. There shall be added to Finding LVII the following: "The requirements for sinking fund and the payment of bond interest and principal in accordance with the Plan of 1932 probably cannot be raised or obtained by assessment upon the lands within the District without resulting in delinquencies in assessment collections in excess of the fifteen percent contemplated by the California Irrigation District Act and it is necessary that the Plan of 1932 be modified."

Objection No. 22 has been withdrawn.

Objection No. 23 has been withdrawn.

Objection No. 24 is sustained in part. There shall be added, beginning in the fifth line of Finding LXIX, after the words, "within the Imperial Irrigation District," and before the words, "which assessment and levies" the following: "and from the proceeds of sale of lands acquired by the District for nonpayment of assessments, if any such proceeds remain after necessary application to operating expenses."

Objection No. 25 is overruled.

Objection No. 26 is overruled.

Objection No. 27 is overruled.

Objection No. 28 is overruled.

Objection No. 29 is overruled.

Objection No. 30 is overruled.

Objection No. 31 is overruled.

Objection No. 32 is sustained in part. Finding XCI shall be rewritten to read as follows: "That it is for the best interests of all parties that said Plan of Composition be approved and confirmed."

Objection No. 33 is sustained in part. Finding XCII shall be rewritten to read as follows: "That it is not true that any money on hand in the bond fund or funds of the District constitute a trust fund or trust funds belonging to the objecting defendants herein, and in that regard the Court finds that said objecting defendants herein appearing have no other or different or additional right or privilege in or to any of the moneys or money in said bond fund or funds not had alike by the holders of all other bonds, coupons and registered warrants affected by the Plan of Composition herein."

Except as hereinbefore expressly indicated, all other objections are overruled.

The form of decree last submitted is approved.

All other motions and requests for orders now pending are denied.

It is so ordered.